B.B. Motor Carriers, Inc. et al., Petitioners v.
Commonwealth of Pennsylvania, Pennsylvania
Public Utility Commission, Respondent; Smith
Hauling, Inc., Intervenor.

Argued March 1, 1978, before President Judge
Bowman and Judges Crumlish, Jr., Wilkinson, Jr.,
Mencer, Rogers, Blatt and DiSalle.

*Christian V. Graf,* with him *Jerome Solomon,* for
appellants.

*William T. Hawke,* Assistant Counsel, with him
*Alfred N. Lowenstein,* Assistant Counsel, and *Barnett
Satinsky,* Chief Counsel, for appellee.

*R. Edward Ferraro,* for intervening appellee.

Opinion by Judge DiSalle, June 8, 1978:
This case comes before this Court upon a petition
to review an order of the Pennsylvania Public Utility

Commission (PUC) granting a certificate of public convenience to Smith Hauling, Inc. (Smith). Smith had filed an application with the PUC for authority

> To transport machinery which because of its size or weight, requires special handling or the use of special equipment, such as a winch truck or winch tractors, pole or extendible trailers, flatbed trailers or low-boy trailers or carry-alls, between points in that part of Pennsylvania west of the eastern boundaries of Potter, Clinton, Centre, Blair, and Bedford Counties.

After extensive hearings the PUC issued the certificate of public convenience. A number of hauling companies (Protestants) appeared before the PUC and vigorously opposed the application of Smith, and have pursued their protest on appeal to this Court. The hearings on the Smith application commenced in 1974 and concluded with the issuance of the certificate for heavy hauling on April 4, 1977.

The record reveals that Smith has provided open and continuous transportation hauling service since its incorporation in 1967 under two separate colors of authority. From the date of its inception Smith provided heavy hauling service under color of authority acquired by a lease arrangement, hereafter referred to as "lease authority," with McGaughey Bros., Inc., a carrier authorized to transport heavy equipment. In a separate proceeding, the PUC found that the lease arrangement between Smith and McGaughey Bros., Inc., did not give any authority to Smith to transport heavy equipment. The PUC issued a cease and desist order on August 26, 1976, in that collateral proceeding. It found, however, that Smith had no scienter that it was illegally conducting its heavy hauling service under the lease authority. The record also reveals that the lawyer for Smith had advised them that it was proper.

The second color of authority which Smith contended gave it the authority to transport heavy equipment was the transfer by the PUC on January 18, 1971, of the rights of one Claude Smith to Smith. However, the transportation rights of Claude Smith encompassed only the authority to haul equipment involved in landscaping work. In any event, the transfer between Claude Smith and Smith was rescinded by the PUC on April 14, 1971, because Smith failed to provide the proper insurance coverage. The PUC, in its final order, found that the transportation service provided by Smith was rendered as a result of a bona fide misunderstanding of the authority actually possessed. Although the PUC had rescinded the "landscaping equipment authority," Quay Smith, the President of Smith, mistakenly believed that he and his attorney had corrected the insurance coverage problem with the PUC. To bolster his contention that he thought Smith possessed the landscaping transportation rights of Claude Smith, Quay Smith showed that he filed annual reports with and paid assessments to the PUC. The PUC concluded that Smith would not have exposed itself to prosecution for unlawful operation unless it believed it was operating within rights granted by the Commission.

In sum, at all times prior to its application, Smith improperly provided heavy equipment transportation under color of either its "landscaping equipment authority" or its "lease authority." The Protestants argued that since Smith had operated in bad faith for nine years prior to the submission of its application, the application should be refused.

This Court may not disturb an order of the PUC absent a violation of constitutional rights, an error of law, or a lack of substantial evidence to support necessary findings of fact. *Seiferd v. Pennsylvania*

*Public Utility Commission,* 12 Pa. Commonwealth Ct. 85, 315 A.2d 320 (1974).

The PUC concluded that Smith had openly operated its service, that there had been no complaints from the public, shippers, other carriers or the PUC, and that although the operations of Smith from 1967 through 1975 were illegal, there was no bad faith conduct on its part. A careful scrutiny of the record reveals that there is substantial evidence present to support those necessary findings of fact. The mere fact of operation without approval is not per se an offense prohibiting the subsequent acquisition of authority. *Johnstown-Pittsburgh Express, Inc. v. Pennsylvania Public Utility Commission,* 5 Pa. Commonwealth Ct. 521, 291 A.2d 545 (1972).

The applicant, Smith, has the burden of proving the need for the proposed service, and its capacity to meet the public need. *Byerly v. Pennsylvania Public Utility Commission,* 440 Pa. 521, 270 A.2d 186 (1970). In order to establish need, it is not necessary to prove an absolute necessity or present demand for the service in every part of the territory involved.

Smith provided testimony from 15 shippers who utilized its services on a continuing basis. The shippers generally indicated that Smith's service was excellent and, in some instances, superior to the other carriers. The shippers' testimony indicates that the other carriers did not solicit their business nor were the other carriers always available. One of the shippers indicated that some of the other carriers caused time delays. The record reveals that Smith, although operating illegally, provided a substantial and excellent service. We find that Smith properly met its burden of showing need for the service it provided. The PUC's finding that the existing certified service, without the service heretofore rendered by Smith, was inadequate for the proper service, accommodation and

convenience of the public, was supported by substantial evidence.

The remaining issue to be considered is whether Smith possessed the requisite fitness to possess a certificate of public convenience. The record amply establishes that it does. Smith has the quality and quantity of personnel and equipment necessary to provide the proper service. It also has the experience in the transportation industry, the record revealing an on-time, efficient and safe operation. Finally, Smith has the financial stability to perform the service. In view of the foregoing, we conclude that there is, on this record as a whole, substantial evidence to support the PUC's grant of the certificate of public convenience to Smith.

Judge MENCER dissents.

### ORDER

AND Now, this 8th day of June, 1978, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is hereby affirmed.