586 A.2d 492

Thomas A. HERCIK, t/d/b/a Hercik's Auto, Petitioner,

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 1, 1990.

Decided Jan. 25, 1991.

378

Anthony S. Dedola, Jr., Uniontown, for petitioner.

Dennis J. Buckley, Asst. Counsel, with him, H. Kirk House, Deputy Chief Counsel, and John F. Povilaitis, Chief Counsel, Harrisburg, for respondent.

Joseph M. George, with him, Mark D. Brooks, Margolis, George & Port, Uniontown, for intervenor, for appellee.

Before DOYLE and SMITH, JJ., and BARRY, Senior Judge.

SMITH, Judge.

Before this Court is a petition for review of the November 9, 1989 order of the Pennsylvania Public Utility Commission (PUC) which granted the exceptions filed by John R. Conaway, Jr. and Shirley R. Conaway, co-partners, trading and doing business as Conaway Hearse and Limousine Sales (Conaway), to the initial decision of Administrative Law Judge, Richard S. Herskovitz (ALJ), denying Cona-

way's application for a certificate of public convenience to operate a limousine service. The PUC's order granted Conaway's application as restrictively amended by Conaway. Petitioner, Thomas A. Hercik (Hercik), filed a protest to Conaway's application and now challenges the PUC's order granting the application. The issues presented for review by Hercik are whether Conaway's operation of limousine services without authority before and after the filing of the application for a certificate of public convenience precluded the PUC from granting this application, and whether the PUC abused its discretion in considering the merits of Conaway's exceptions despite Conaway's failure to set forth supporting reasons in the exceptions.

## I

On February 10, 1988, Conaway filed an application with the PUC seeking a certificate of public convenience to transport persons by limousine between points in Westmoreland, Fayette and Allegheny Counties. As a result of protests filed, Conaway amended the application restricting the proposed service to and from Fayette County to weddings, proms, funerals, anniversaries and other special events.[1] After the hearing held on November 18, 1988, the ALJ entered an initial decision denying Conaway's application based upon a finding that Conaway had operated the limousine service without authority before and after the filing of the application and thus lacked a propensity to operate legally. ALJ Conclusions of Law No. 3. Consequently, the ALJ did not consider the other evidentiary criteria for deciding motor carrier applications.

Upon consideration of Conaway's exceptions to the ALJ's initial decision, the PUC found that Conaway had leased limousines with and without drivers subsequent to the filing of its application. The PUC nonetheless granted Conaway's application as amended, concluding that while evidence of

1. Hercik does not object to the grant of a certificate of public convenience to Conaway to operate the limousine service in Westmoreland County. ALJ Findings of Fact No. 16.

unlawful operations may negatively reflect on Conaway's fitness to operate the proposed service, obedience to the law is only one of the many factors to be considered in determining fitness; that approval of Conaway's application will serve a useful public purpose, responsive to a public demand or need; that Conaway possessed the technical and financial ability to provide the proposed service; and that Hercik failed to show that Conaway's entry into the limousine service field would endanger Hercik's operations.

## II

First, Hercik argues that the evidence presented at the hearing before the ALJ demonstrated Conaway's deliberate disregard for the Public Utility Code (Code), 66 Pa.C.S. §§ 101–3315, and the PUC rules and regulations and that the PUC thus erred in granting Conaway's application.[2] When an order involving a certificate of public convenience is granted, this Court may not disturb that order except for an error of law, lack of evidence to support the findings, or a violation of constitutional rights. *De Gregorio v. Pennsylvania Public Utility Commission*, 85 Pa. Commonwealth Ct. 354, 481 A.2d 1241 (1984). Further, this Court must accept the PUC's exercise of its discretion in making rules, regulations, findings and determinations unless unsupported by the record or based upon an error of law. *National Retail Transportation, Inc. v. Pennsylvania Public Utility Commission*, 109 Pa. Commonwealth Ct. 72, 530 A.2d 987 (1987).

Section 1103(a) of the Code, 66 Pa.C.S. § 1103(a), provides that "[a] certificate of public convenience shall be granted by [an] order of the [PUC], only if the [PUC] shall find or determine that the granting of such certificate is

2. The ALJ found that Conaway began leasing limousines about fifteen years ago, but was not aware that a PUC authority was required to operate such business until notified by the PUC; that Conaway had leased limousines with and without the drivers since the filing of its application; and that Conaway rented limousines only if the person requesting the rental could not rent a limousine elsewhere. ALJ Findings of Fact Nos. 10–12.

necessary or proper for the service, accommodation, convenience or safety of the public." The PUC has promulgated evidentiary criteria for deciding an application for a certificate of public convenience set forth at 52 Pa.Code § 41.14 which provides:

§ 41.14 **Evidentiary criteria used to decide motor common carrier applications.**

(a) An applicant seeking motor common carrier authority has a burden of demonstrating that approval of the application will serve a useful public purpose, responsive to a public demand or need.

(b) An applicant seeking motor common carrier authority has the burden of demonstrating that it possesses the technical and financial ability to provide the proposed service, *and, in addition, authority may be withheld if the record demonstrates that the applicant lacks a propensity to operate safely and legally.*

(c) The Commission will grant motor common carrier authority commensurate with the demonstrated public need unless it is established that the entry of a new carrier into the field would endanger or impair the operations of existing common carriers to an extent that, on balance, the granting of authority would be contrary to the public interest. (Emphasis added.)

Hercik's contention concerns the evidentiary criteria set forth in Section 41.14(b) and raises an issue of whether Conaway's operations without authority before and after the filing of the application absolutely precluded the PUC from granting the application to Conaway.

In *Brinks, Inc. v. Pennsylvania Public Utility Commission,* 500 Pa. 387, 456 A.2d 1342 (1983), Brooks filed an application with the PUC in March 1976 seeking to extend Brooks' authority to perform services of a contract carrier. Protests were filed to the application by Brinks, Inc. and others based upon the activities of Brooks' affiliate, WFB, Inc., a company owned by William F. Brooks, who also owned 85% of Brooks. The PUC nonetheless granted the application in April 1978. Brinks appealed to this Court

contending that Brooks' affiliate had unlawfully continued to conduct armored car service after an adverse ruling by this Court, and during the pendency of further appeal, in which it was held that WFB's armored car service was not within the scope and authority of a PUC permit issued to WFB in 1974. *See Purolator Security, Inc. v. Pennsylvania Public Utility Commission,* 32 Pa.Commonwealth Ct. 175, 378 A.2d 1020 (1977). Brinks argued that WFB's prior unlawful operations should be imputed to Brooks and that it was therefore unfit to conduct the extended services which Brooks sought to perform by its March 1976 application. This Court agreed and reversed the PUC's grant of the application. On appeal by Brooks and the PUC, the Pennsylvania Supreme Court reversed the order of this Court stating:

> Our case law is clear that, although a favorable finding of fitness may not be based upon evidence of the quality of service conducted in willful violation of a court order or the Commission's authority, the mere fact of prior operation in violation of a court order or the Commission's authority does not preclude a carrier from obtaining lawful authority in a subsequent proceeding before the Commission.... Thus, while WFB's continuing to haul money in deliberate disregard of the Commonwealth Court's order gave rise to a negative inference concerning Brooks' fitness, the Commission could still have granted the requested contract carrier authority without abusing its discretion *so long as the Commission had before it positive evidence of Brooks' fitness independent of the evidence relating to the period of unlawful operation.* (Emphasis added; citations omitted.)

*Id.,* 500 Pa. at 391–92, 456 A.2d at 1344. The Supreme Court further explained the rationale behind its holding:

> The justification for the rule permitting the acquisition of contract carrier rights despite past unlawful operations is evident. The essence of public utility regulation is to assure that the public's needs are best served at the most reasonable rates. If past unlawful operations were

deemed conclusive of an applicant's fitness, the Commission would be powerless to grant the application of a carrier who, despite its past unlawful activities, has otherwise demonstrated its present fitness to perform services beneficial to the public.

*Id.,* 500 Pa. at 392, n. 3, 456 A.2d at 1344–45, n. 3.

 Thus, under *Brinks,* it is clear that the incidents of Conaway's past unlawful operations are not conclusive of the question of Conaway's present fitness and such prior unlawful operations do not preclude Conaway from obtaining an authority. It is in the discretion of the PUC to determine whether authority must be withheld considering other evidentiary criteria under 52 Pa.Code § 41.14. *National Retail. See also B.B. Motor Carriers, Inc. v. Pennsylvania Public Utility Commission,* 36 Pa.Commonwealth Ct. 26, 389 A.2d 210 (1978) (the mere fact of operation without approval is not per se an offense prohibiting the subsequent acquisition of authority). This Court then must examine the record to decide whether the PUC's decision was based upon the positive evidence of Conaway's fitness independent of the evidence of prior unlawful operations.

As to the first criterion under 52 Pa.Code § 41.14(a), three witnesses testified on behalf of Conaway that there is a need for additional limousine services in Fayette, Westmoreland and Allegheny Counties. One witness, a travel agent, testified that Hercik's two limousines are not adequate to serve the need for the travel agent's customers and that there had been occasions when he could not obtain limousines because Hercik's were all booked. November 18, 1988 Hearing, N.T., pp. 38–42. Next, a businessman testified that on one occasion, Hercik's two limousines were not adequate to meet his request for five limousines. *Id.,* pp. 50–53. Finally, the Fayette County Commissioner stated that the expansion of the industries in the area created the demand for additional limousine service. *Id.,* pp. 57–59. Hercik also agreed that there is a need for additional service. *Id.,* p. 74. Thus, there was substantial evidence to

support the PUC's finding that "approval of the [Conaway's] application will serve a useful public purpose, responsive to a public demand or need, consistent with 52 Pa.Code § 41(a)." PUC Opinion and Order, p. 8.

The ALJ made the following findings which are not disputed by Hercik: that Conaway has been in the business of selling and leasing specialty vehicles such as funeral cars, limousines and buses for the past twenty to twenty-five years; that Conaway employs twenty-five to twenty-eight people, ten of whom would be available for the proposed limousine service; that Conaway's facilities consist of seven offices, four bays for repairing vehicles, six bays to clean vehicles and two fenced lots; that Conaway owns twenty-eight limousines in excellent condition and has a maintenance and safety program; that Conaway's net worth is in excess of one million dollars; and that Hercik owns only two limousines. ALJ Findings of Fact Nos. 2–6. Clearly, Conaway has shown, and Hercik concedes, that Conaway possesses the technical and financial ability to provide the proposed service. 52 Pa.Code § 41.14(b); Hercik's Brief, p. 10.

Finally, a protestant has the burden of showing that "the entry of a new carrier into the field would endanger or impair the operation of existing carriers to an extent that, on balance, the granting of an authority would be contrary to the public interest." 52 Pa.Code § 41.14(c); *Morgan Drive Away, Inc. v. Pennsylvania Public Utility Commission,* 99 Pa.Commonwealth Ct. 420, 512 A.2d 1359 (1986). In this regard, Hercik failed to present any evidence to meet its burden of proof. In sum, the record demonstrates positive evidence of Conaway's fitness independent of the prior unlawful operations, and consequently, the PUC's granting of a certificate of public convenience must be affirmed.

Hercik cites *National Retail* to further support its contention that the PUC erred in finding Conaway's fitness to operate the proposed service. *National Retail,* however, does not stand for the proposition that evidence of prior bad

faith illegal activities precludes the PUC from further considering the applicant's fitness. This Court held in *National Retail* that "an applicant for common carrier authority, who has provided unauthorized services in the past, cannot sustain its burden of proving the need for service through evidence of an illegal course of conduct if such conduct represents a bad faith violation of the Code or the PUC's regulations or orders." Further, "[w]hether prior violations were excusable is primarily a matter for the PUC." *Id.* 109 Pa.Commonwealth Ct. at 84, 481 A.2d at 993. The instant case is distinguishable in that Conaway, unlike the applicant in *National Retail,* did not attempt to prove need for service through evidence of the quality of service conducted in violation of the Code. Contrary to Hercik's argument, the Court in *National Retail* upheld the PUC's denial of the application simply because the remaining evidence was insufficient to support a finding that the service was needed by the public.[3] Since the PUC's finding of Conaway's fitness was based upon positive evidence independent of Conaway's past illegal operations, Hercik's argument must be rejected.

## III

■ Finally, Hercik contends that the exceptions filed by Conaway to the ALJ's initial decision should not have been considered by the PUC since Conaway failed to set forth supporting reasons for its exceptions as required by 52 Pa.Code § 5.533(b) which provides: "Exceptions shall be stated in specific, numbered paragraphs, identifying the finding of fact or conclusion of law to which exception is taken and cite relevant pages of the decision. Supporting reasons for the exceptions shall follow each specific exception." The PUC in its decision found that Conaway's exceptions are "faulty from a procedural standpoint" due to Conaway's failure to set forth reasons for the exceptions. Nonetheless, the PUC decided to consider the merits of

3. It must be noted that Hercik also admitted at the hearing that it had operated limousine service without obtaining authority before the filing of the application for a certificate. N.T., pp. 64–65, 77.

Conaway's exception. The PUC's Rules of Administrative Practice and Procedure provides in pertinent part:

### § 1.2. Liberal construction.

(a) This subpart shall be *liberally* construed to secure the just, speedy and inexpensive determination of every action or proceeding to which it is applicable. The [PUC] or presiding officer at any stage of an action or proceeding *may disregard an error or defect of procedure which does not affect the substantive rights of the parties.* (Emphasis added.)

52 Pa.Code § 1.2(a). In light of the foregoing mandate, this Court concludes that the PUC did not commit an abuse of discretion in construing its own rules liberally to provide the parties an opportunity to be heard on the merits. *See Toney v. Department of Public Welfare,* 127 Pa.Commonwealth Ct. 162, 561 A.2d 75 (1989) (great deference is given to an agency's interpretation of its own regulations except where the interpretation is plainly erroneous or inconsistent with controlling regulations). Hercik's substantive rights were in no way affected by the alleged defect.

Since the decision of the PUC to grant an application for a certificate of public convenience is based upon substantial evidence in the record, the order of the PUC will not be disturbed.

### ORDER

AND NOW, this 25th day of January, 1991, the order of the Pennsylvania Public Utility Commission entered November 9, 1989 is hereby affirmed.