**SOUTH RIVER POWER PARTNERS, L.P., Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 13, 1995.

Decided Feb. 28, 1996.

Reargument Denied April 23, 1996.

---

Clifford B. Levine, for Petitioner.

Kathryn G. Sophy, Assistant Counsel, for Respondent.

Tanya J. McCloskey, Assistant Consumer Advocate, for Intervenor, Office of Consumer Advocate.

Alan P. Buchmann, for Intervenor, West Penn Power Company.

Before DOYLE and FRIEDMAN, JJ., and LORD, Senior Judge.

DOYLE, Judge.

South River Power Partners (South River) petitions for review of an interlocutory order of the Pennsylvania Public Utility Commission (PUC) which requires South River to send, at its own expense, due process notice of its proposed sale of electricity[1] to the West Penn Power Company (West Penn) to all customers of West Penn. We are also presented with a motion by West Penn to quash portions of South River's petition for review for having failed to initially raise certain issues before the PUC.

South River is the developer of a waste coal and coal-fired facility to be located in Fayette County, Pennsylvania. Under the Federal Public Utility Regulatory Policies Act (PURPA), utilities are required to purchase electricity which is needed to meet the increased demands of its customers from qualifying cogeneration and small power production facilities (QFs), provided that the cost does not exceed the incremental cost to the utility of generating the additional electricity itself or purchasing the electricity from another source. On October 28, 1993, South River filed a complaint with the PUC in which it alleged that it is a QF under PURPA and that West Penn should be required to enter into a long term contract with South River in order to meet its long term need for additional capacity.

West Penn not only denied that it was required to purchase electricity from South River under PURPA, but also alleged that the proposed plan would result in an unreasonable increase in the rates paid by its customers. The matter was then assigned to an administrative law judge (ALJ). On January 14, 1994, South River filed a motion requesting that West Penn provide notice to its customers of the proceeding pursuant to

---

1. The sale of electrical energy is regulated under the Federal Public Utility Regulatory Policies Act of 1978, Pub.L. No. 95–617, 92 Stat. 3117 (1978), codified primarily in 16 U.S.C. §§ 796, 791a, 823a, 824a, 824d, 824i–824k, 824(b), 824(e), 825d, 2601–2603, 2611–2644, 2701–2708 and 2645.

this Court's decision in *Barasch v. Pennsylvania Public Utility Commission*, 119 Pa. Cmwlth. 81, 546 A.2d 1296 (1988), *petition for allowance of appeal denied*, 523 Pa. 652, 567 A.2d 655 (1989) [hereinafter *Milesburg I*]. In *Milesburg I*, we held that before the PUC makes an adjudication which could possibly effect a substantial property interest of a utility's customers, such as a rate increase, those customers must be afforded notice and an opportunity to comment on the proposed action. We concluded:

> [D]ue process requires that, before the PUC may issue a declaration approving the legality of the terms and conditions of a contract for a utility's purchase of power from a QF that includes payments for capacity, the utility's customers must be provided with notice and an opportunity to be heard to challenge the proposed action.

*Id.* at 1306.

West Penn did not dispute that notice to its customers of the pending proceeding, required under *Milesburg I*, must be provided. However, West Penn argued that it should not be required to provide such notice in its regular monthly billing envelopes, since it disagrees with the contents of the notice and believes that its customers will infer that West Penn endorses South River's proposal if the notice is included with its bill. Instead, West Penn contended that South River should send the notice by separate mailing and at its own expense.

South River, though, maintained that the notice is simply a legal notice which is neutral on its face and would merely inform West Penn's customers of the proceeding concerning South River's proposed sale of electricity. Therefore, South River argued, West Penn's contention that its customers

would be confused by the notice so as to conclude that it endorses the project is erroneous. South River further noted that West Penn's fixed cost of mailing bills to its customers would not be increased if the notice were included, but that it would cost South River either $204,587.65 (first class mail rate) or $135,273.97 (bulk mail rate) if it were required to mail separate notices. South River argued that this mailing cost would constitute, in essence, an exorbitant and prohibitive filing fee, effectively preventing QF's like itself from exercising their rights under PURPA and thus allowing utilities to defeat proposed projects by simply alleging that they disagree with the contents of the proposed notice.

By an order dated June 12, 1995, the ALJ held that West Penn was required to include the required *Milesburg I* notice in its billing envelopes. As previously agreed to by South River, South River would pay eight thousand dollars for printing and other miscellaneous costs associated with producing the notice. Therefore, although West Penn was required to mail the notice, it would not incur any costs beyond the normal fixed costs connected with mailing its bills to its customers.

On June 16, 1995, West Penn requested that the PUC review the ALJ's decision. By an order dated July 21, 1995, the PUC reversed the ALJ's decision and ordered that South River absorb the costs of a separate mailing of notice to West Penn's customers. The PUC found that customers could be confused by the notice if it were included as a bill insert and that South River should bear the entire cost of mailing the notice since it initiated the proceeding.

■ South River appeals the decision of the PUC to our Court.[2] At the outset, we

---

2. We note that the order which South River appeals from is interlocutory in nature. Although an appeal from an interlocutory order is ordinarily not permitted under the Pennsylvania Rules of Appellate Procedure, the present case falls within at least one, and possibly two, exceptions to that rule which permit an immediate appeal as a matter of right from such an order. First, this case clearly involves a collateral order of an administrative agency. *See* Pa.R.A.P. 313. Second, Pa.R.A.P. 311(f) permits an interlocutory appeal of "an order of a ... government unit **remanding** a matter to an administrative agency

or hearing officer that decides an issue which would ultimately evade appellate review if an immediate appeal is not allowed." (Emphasis added.) While the PUC's order in this case does not actually contain the word "remand" in it, the effect of the order was to send the case back to the ALJ for him to conduct further hearings, after the *Milesburg I* notice was sent to West Penn's customers, on the underlying merits of South River's initial complaint filed with the PUC. *See* Webster's Third New International Dictionary 1919 (1986) ("remand" means "to return (a case) from one court to another ... or

must stress that the merits of South River's proposal have not been litigated before the PUC and it would be premature for this Court to express an opinion on the subject absent a fully developed record. The only issues properly before us are the narrow questions of whether portions of South River's petition for review should be quashed, and whether West Penn is required to send notice to its customers of South River's proposal in its billing envelopes.

### I. West Penn's Motion to Quash.

West Penn initially argues that South River's petition for review contains issues which were not raised before the PUC and that we should therefore quash these issues as having been waived.[3] Although West Penn is correct that some of these issues were not argued below, we do not believe that quashing South River's petition for review, either in whole or in part, would be appropriate given the procedural circumstances surrounding this case.

Rule 1551(a) of the Pennsylvania Rules of Appellate Procedure provides:

(a) **Review of Quasijudicial Orders.** Review of quasijudicial orders shall be heard by the court on the record. No question shall be heard or considered by the court which was not raised before the government unit except:

(1) Questions involving the validity of a statute.

(2) Questions involving the jurisdiction of the government unit over the subject matter of the adjudication.

(3) Questions which the court is satisfied that the petitioner could not by the exercise of due diligence have raised before the government unit. If, upon hearing before the court, the court is satisfied that any such additional question within the scope of this paragraph should be so raised it shall remand the record to the government unit for further consideration of the additional question.

West Penn argues that since none of the issues raised by South River involve the validity of a statute or the jurisdiction of the PUC, these issues must be deemed to have been waived unless it is determined that South River was unable to raise them through the "exercise of due diligence" before the PUC.

■ Although West Penn's recitation of the law is correct, we are unable to agree with its conclusion that South River was fully able to raise these issues below and that these issues were thereby waived. Under Pa.R.A.P. 501, "any party who is aggrieved by an appealable order ... may appeal therefrom." Conversely, it is a well settled principle of law that a party who is not aggrieved by an order has no standing to appeal. *See, e.g., Tomczak v. Workmen's Compensation Appeal Board (Pro–Aire*

---

from a court to an administrative agency."). Therefore, although the PUC's order may technically not fit precisely within the parameters of Pa.R.A.P. 311(f), we believe that it arguably falls within the spirit of that rule. However, since the PUC's order is unquestionably governed by Pa.R.A.P. 313, we are not required to definitively rule on the scope of Pa.R.A.P. 311(f) at this time. We nonetheless note that if the present order did not fall within the parameters of Pa.R.A.P. 311(f), and was not subject to Pa.R.A.P. 313, the precise issue which is now before this Court would certainly evade appellate review as it would be moot in the further proceedings.

**3.** West Penn specifically alleges that the following arguments raised in South River's petition for review were waived:

a. The Order violates PURPA because it imposes an unreasonable obstacle to a qualifying facility ("QF") being able to implement its rights under federal law;

b. The decision violates PURPA because it imposes an unreasonable regulatory constraint on a qualifying facility, which, under federal law, is not subject to the types of regulatory requirements imposed on a utility;

[c.] In *Milesburg I*, the utility, not the QF, is obligated to provide customer notice in the form of a bill insert. Under *Milesburg II* [*Armco Advanced Materials Corporation v. Pennsylvania Public Utility Commission*, 135 Pa. Cmwlth. 15, 579 A.2d 1337 (1990), *affirmed per curiam*, 535 Pa. 108, 634 A.2d 207 (1993), *cert. denied*, — U.S. —, 115 S.Ct. 311, 115 S.Ct. 311, 130 L.Ed.2d 274 (1994 ("*Milesburg II* ")] and PURPA, a QF should not be required to undergo the type of regulatory burdens before it may seek administrative review of its PURPA rights;

[d.] The decision is generally inconsistent with PURPA.

(West Penn's Brief in Support of its Motion to Dismiss at 7–8.)

*Transport),* 150 Pa.Cmwlth. 431, 615 A.2d 993 (1992); *Mahanoy Area School District v. Budwash,* 146 Pa.Cmwlth. 72, 604 A.2d 1156 (1992).

■ In the present case, the ALJ ruled in favor of South River. South River, therefore, was not an aggrieved party before the PUC and did not have the right, nor the need, to appeal the ALJ's decision. Before the PUC, South River was in the position of an appellee. Given this circumstance, it would be inappropriate to grant West Penn's motion to dismiss or quash portions of South River's petition for review since South River was not in the position to raise all of these issues prior to its appeal to our Court. Therefore, West Penn's motion to dismiss or quash portions of South River's petition for review is denied.

Under Pa.R.A.P. 1551(a)(3), we would ordinarily be required to remand the case in order for the PUC to consider those questions which were not raised below. However, having reviewed the brief submitted by South River, as appellee before the PUC, we are convinced that South River did in fact submit arguments concerning the central issues of whether requiring it to mail legal notice to West Penn's customers at its own expense violated PURPA and this Court's decision in *Milesburg I.* Therefore, since we find that the PUC has already fully considered the pivotal questions upon which the outcome of this case ultimately rests in making its decision, we can properly reach the merits without first remanding the case to the PUC.[4]

## II. South River's Appeal of the PUC's Order Which Would Require South River to Mail Milesburg I Notice at Its Own Expense.

We now address the merits of South River's appeal of the PUC's order. South River makes the following arguments in support of reversing the PUC's decision: (1) the PUC's order, by imposing on South River the burdensome and exorbitant cost of a separate mailing to West Penn's customers, is contrary to the underlying purpose of PURPA and this Court's decision in *Milesburg I;* (2) West Penn's desire to disassociate itself from a legal notice, neutral on its face, is not a sufficient basis for the PUC to allow West Penn to refuse to include such notice in its regular monthly billing envelopes; (3) since South River is not a public utility, the PUC lacks the authority to require South River to provide *Milesburg I* notice to West Penn's customers; and (4) since the Office of the Consumer Advocate, the Office of Small Business Advocate, West Penn Industrial Intervenors, Armco Advanced Materials Company and Allegheny Ludlum Corporation have all intervened in this case, the interests of West Penn's customers are sufficiently protected so that *Milesburg I* notice is not necessary and need not be provided by South River or West Penn.

■ First, we must reject South River's contention that the active participation in this case by the Office of the Consumer Advocate and various other interested parties eliminates the need for notice to be provided to West Penn's customers. In *Milesburg I,* the Office of Consumer Advocate and several industrial ratepayers were actively involved in the underlying litigation. Nevertheless, we held that notice must be provided to all of the utility's customers. In this respect, we do not find the present case distinguishable from *Milesburg I.* There is simply no reason to conclude that the Office of Consumer Advocate, and a few other interested parties, would be able to fully represent the interests of all of West Penn's customers at the PUC hearing in this case when we implicitly found that similar representation was inadequate in *Milesburg I* and that actual notice must be given to the utility's customers. While the majority of West Penn's customers would undoubtedly be content to allow the Office of Consumer Advocate to fight their battle for

4. Remanding the case at this time, thereby delaying the decision on the underlying question of South River's obligation to send notice under PURPA and *Milesburg I,* is not only not required under the Rules of Appellate Procedure, but also would not serve the interests of justice. Since the essential arguments on this limited question were already fully argued before the PUC, additional hearings on this subject would not significantly enhance the PUC's ability to make its decision, but instead would merely further delay the ultimate resolution of this case.

them, due process requires at a minimum that West Penn's customers be notified of the PUC hearing and be afforded an opportunity to participate in that proceeding if they so choose. *Milesburg I.*

Second, we must also reject South River's contention that the PUC lacks jurisdiction over it since it is not a utility and therefore does not have the authority to order it to send notice to West Penn's customers. It is true that under PURPA, QFs are exempt from state regulation regarding rates or the financial or organizational regulation of electric utilities. *See* 16 U.S.C. § 824a–3(e); 18 C.F.R. § 292.602(c). However, the present case does not involve an attempt by the PUC to regulate the rates charged by South River or to interfere with its internal operations.

 Section 210(f) of PURPA, 16 U.S.C. § 824a–3(f), specifically provides that jurisdiction in controversies involving a utility's obligation to purchase electricity from a QF under PURPA is vested in state regulatory agencies of electric utilities such as the PUC. *See GPU Industrial Intervenors v. Pennsylvania Public Utility Commission,* 156 Pa. Cmwlth. 626, 628 A.2d 1187 (1993); *Milesburg I.* South River initiated the present case by filing a complaint against West Penn, a public utility, in which it alleged that West Penn refused to purchase electricity from it. Although South River is not itself a public utility, the PUC clearly has jurisdiction to order parties which appear before it to perform those acts which are necessary for the PUC to fulfill its obligations under PURPA. *See Fairview Water Co. v. Pennsylvania Public Utility Commission,* 509 Pa. 384, 502 A.2d 162 (1985) (PUC enjoys power both expressly conferred and *necessarily implied* by the legislature); Section 501 of the Public Utility Code, 66 Pa.C.S. § 501 (PUC granted broad authority to carry out those powers expressly delegated to it). We must therefore conclude that QFs like South River do fall under the jurisdiction of the PUC and are generally subject to orders promulgated by it. To find otherwise would produce an untenable situation in which utilities would be required to follow the orders of the PUC, but other parties would be free to disregard

such orders with impunity whenever they disagreed with the result or the procedure.

Nevertheless, since we believe that the PUC's order in this case, requiring South River to send separate notice to West Penn's customers at its own expense, is overly burdensome and at odds with our decision in *Milesburg I,* we reverse.

 We recognize that our scope of review of a decision of the PUC is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or whether necessary findings of fact are supported by substantial evidence in the record. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Armco Advanced Materials Corp. v. Pennsylvania Public Utility Commission,* 664 A.2d 630 (Pa.Cmwlth.1995). Also, we note that the PUC enjoys broad discretion in making determinations in cases which it adjudicates and ordinarily we will not disturb a decision of this kind on appeal. *Hercik v. Pennsylvania Public Utility Commission,* 137 Pa.Cmwlth. 377, 586 A.2d 492 (1991).

However, the order of the PUC in the present case constitutes a substantial infringement upon the rights of South River, is at odds with our holding in *Milesburg I,* and frustrates the underlying purpose of PURPA by creating a significant administrative obstacle to the development of QFs. Therefore, we find that the PUC's decision lacks legal justification, constitutes an abuse of discretion, and must be reversed.

In *Milesburg I,* we required utilities to send notice to their customers of proceedings involving the proposed purchase of electricity from QFs. Significantly, the cost to utilities of complying with this requirement was minimal since such notice could be included in their regular billing envelopes, thereby avoiding any additional costs for postage. Unfortunately, QFs such as South River do not have the benefit of being able to simply include such legal notices in billing envelopes, and thus, would have to bear the substantial cost of sending such notices through a separate mailing. In the present case, the cost of such a mailing would range from $135,273 to $204,587. We do not believe it is fair to place such an onerous burden on South River as a

prerequisite to it receiving a due process hearing. Furthermore, we are unpersuaded by the argument of West Penn and the PUC that South River should bear the costs since it initiated the proceeding. We find that any distinctions between the parties based on the procedural history of the case are insignificant and should not form the basis for determining who must send notice to West Penn's customers or by what procedure.

In *Milesburg I,* we recognized that part of the underlying rationale of Congress in enacting PURPA was the realization that historically, utilities had either refused to purchase electricity from cogeneration and small power production facilities like South River, or had used their position as a monopoly to offer unfairly low prices to purchase that electricity. PURPA was an attempt to rectify this situation by encouraging the development of QFs by requiring utilities to purchase electricity from QFs at set prices. We concluded in *Milesburg I* as follows:

> Given the federal and state policy of encouraging the development of cogeneration and small power production, in part by minimizing the burdens involved in the examination of rates of purchases of power by utilities from QFs, the [PUC] must devise a procedure that provides the essential elements of a hearing, but allows for consideration of petitions of the type involved here in as expeditious and minimally burdensome a manner as possible.

*Milesburg I,* 546 A.2d at 1307. In the present case, the PUC's order not only does not provide for a procedure which is minimally burdensome to South River, but in fact creates a substantial obstacle to South River exercising its rights under PURPA. As such, it is fundamentally incompatible with the underlying philosophy of PURPA and must be reversed.

West Penn's major argument against including the legal notice in its regular billing envelopes is that it disagrees with South River's proposal and does not want to be associated with it. West Penn further alleges that by including the legal notice in its envelopes its customers will be confused and will conclude that West Penn actually endorses the South River project.

In support of its position, West Penn relies primarily on the United States Supreme Court's decision in *Pacific Gas and Electric Co. v. Public Utilities Commission of California,* 475 U.S. 1, 106 S.Ct. 903, 89 L.Ed.2d 1 (1986), in which the court held that requiring a utility to distribute information published by a third party public interest group, with which the utility disagreed, violated the utility's First Amendment right to free speech. However, a close reading of that case reveals that its holding does not apply to the type of legal notice at issue in the present case. In reaching its decision, the Supreme Court specifically observed:

> The Commission's order is thus readily distinguishable from orders requiring [utilities] to carry various legal notices, such as notices of upcoming Commission proceedings or of changes in the way rates are calculated. The State, of course, has substantial leeway in determining appropriate information disclosure requirements for business corporations. *See Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 651, 105 S.Ct. 2265, 2281–82, 85 L.Ed.2d 652 (1985). Nothing in *Zauderer* suggests, however, that the State is equally free to require corporations to carry messages of third parties, where the messages themselves are biased against or are expressly contrary to the corporation's views.

*Id.* at 16 n. 12, 106 S.Ct. at 911 n. 12 (emphasis added). Accordingly, we not only find *Pacific Gas and Electric Co.* to be distinguishable from the present case, but also find that it supports the decision we reach today.

The notice to be included in West Penn's billing envelope is purely a legal notice. It has been prepared by the PUC's Law Bureau using neutral language and contains large disclaimers which inform the reader, in no uncertain terms, that West Penn does not endorse the proposed project. Unlike the facts in *Pacific Gas and Electric Co.,* the material does not express a viewpoint, but instead merely informs West Penn's customers of the upcoming legal proceeding and of their right to participate in that process. Since the notice is neutral on its face, there is no reason to believe that it will, in and of

itself, cause West Penn's customers to conclude that West Penn is in favor of the project.

We further reject West Penn's contention that the mere presence of the notice in its envelope, regardless of what the notice actually says, would create confusion among its customers and lead them to conclude that West Penn is associated with the South River project. Such a conclusion is unsupported by any facts in the record, or elsewhere, and constitutes little more than speculation on the part of West Penn regarding the ability of its customers to understand clearly written legal notices sent to them through the mail. The mailing of legal notices, and the ability of citizens to comprehend such notices, is necessary for the smooth and efficient operation of our legal system. If we were to accept West Penn's conclusion, we would be forced to reevaluate the efficacy of legal notice sent not just in the present case, but in all cases where the mailing of legal notice is required. Of course, we believe that such a major change in our legal procedure is unwarranted and reaffirm our view that the current system of mailing legal notice adequately protects the rights of all citizens.

 In the present case, we hold that West Penn must include the *Milesburg I* notice in its regular billing envelope as soon as is reasonably possible given normal business constraints. South River has already agreed to pay for the printing and other miscellaneous costs of sending the notice. Although requiring South River to pay for the entire mailing of these notices, including postage, would have been overly burdensome, we find that the financial obligation which South River has accepted in this matter is fair and constitutes only a minimal burden on it. We further find that requiring South River to pay these costs, while requiring that West Penn include the notice in its billing envelope, not only equitably distributes the burdens of sending notice between the parties, but fully comports with the purposes of PURPA.

Accordingly, we reverse the decision of the PUC.

## ORDER

NOW, February 28, 1996, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is hereby reversed and the case is remanded for further proceedings consistent with this opinion.

The PUC is specifically ordered to require the West Penn Power Company to send legal notice to its customers as required by our decision in *Milesburg I,* 546 A.2d 1296 (1988), *petition for allowance of appeal denied,* 523 Pa. 652, 567 A.2d 655 (1989), and under the terms specified in our opinion in the present case, as soon as reasonably possible given the normal restrictions of its business. We further order that the PUC require that the West Penn Power Company pay for all postage for the mailing of this legal notice, but the costs of printing and any other miscellaneous costs must be paid by South River Power Partners.

Jurisdiction relinquished.