792 P.2d 1138

**CITY OF SUNLAND PARK, Petitioner,**

v.

**SANTA TERESA CONCERNED CITIZENS ASSOCIATION, INC., Respondent.**

**No. 18875.**

Supreme Court of New Mexico.

May 24, 1990.

Rehearing Denied June 14, 1990.

Coppler & Aragon, Frank R. Coppler, Paul Mannick, Santa Fe, for petitioner.

Vicki L. Byrnes, Santa Teresa, Lipson, Dallas & Weiser, Gary B. Weiser, El Paso, Tex., for respondents.

## OPINION

SOSA, Chief Justice.

### I. PROCEEDINGS BELOW

This case has reached us by traversing the following stages.

### A. PROCEEDINGS BEFORE THE DONA ANA COUNTY COMMISSION

On June 5, 1986, Petitioner, City of Sunland Park (the city), wrote letters to various property owners in southern Dona Ana County encouraging them to seek annexation into the city. On July 23, 1986, the Dona Ana County Commission unanimously disapproved of the planned annexation as proposed in the city's letters to the property owners. On August 11, 1986, various property owners, many of whom had received the city's letter and who had formed themselves into the Santa Teresa Concerned Citizens Association, Respondent herein (the association), filed a petition to incorporate as a municipality pursuant to NMSA 1978, Section 3-2-1 et seq. (Repl. Pamp.1987). The land that was the subject of the association's petition was "urbanized territory" as defined by NMSA 1978, Section 3-2-3, because it lay within five miles of the city's boundaries and because the city had a population of more than five thousand persons.

On August 20, 1986, the city filed a petition with the New Mexico Municipal Boundary Commission, pursuant to NMSA 1978, Sections 3–7–11 to –16 (Repl.Pamp.1987), seeking annexation of virtually the same territory. On August 26, 1986, the county manager of Dona Ana County notified the city by letter that the county commission would hold hearings pursuant to NMSA 1978, Section 3–2–3 (Repl.Pamp.1987), for the purpose of determining how services to the territory proposed to be incorporated could more quickly be provided. *See id.* § (B)(3). At a hearing before the commission on September 3, 1986, the city argued that the commission was biased, owing to its unanimous vote on July 23 against the city's planned annexation, and asked the commission to recuse itself from adjudicating the issue of the association's planned incorporation. At another hearing, on September 9, 1986, the city challenged the commission's jurisdiction to adjudicate the issue. Nevertheless, the commission held hearings on the issue, and on October 6, 1986, it ruled that the association conclusively had proven, as required by Section 3–2–3(B)(3), that the association could more quickly provide services to the area proposed to be incorporated than could the city.

## B. PROCEEDINGS IN DISTRICT COURT

The city filed a petition for writ of certiorari with the District Court for the Third Judicial District asking the court, in pertinent part, (1) to stay any action by the county commission to schedule an election on the issue of the proposed incorporation; (2) to find that the commission lacked jurisdiction to adjudicate the issue; and (3) after reviewing the evidence, to overturn the commission's decision of October 6. On May 21, 1987, the district court issued its decision. It construed Section 3–2–3(B)(3) so as to permit the association to proceed as it did, thereby denying the city's challenge to the commission's jurisdiction. However, the court found that the association had not proven conclusively, as required by Section 3–2–3(B)(3), that it could provide services to the territory proposed

to be incorporated sooner than could the city. Accordingly, the court reversed the commission's decision of October 6 and made permanent a previous order staying any election on the question of incorporation.

## C. PROCEEDINGS BEFORE THE COURT OF APPEALS

The association appealed the district court's decision. In its opinion issued on August 3, 1989, the court of appeals reversed the district court, while nonetheless agreeing with the district court's reading of Section 3–2–3(B). That is, the court of appeals held that the association was entitled to proceed with its petition for incorporation as it had done—presenting evidence pursuant to Subsection (B)(3) to prove conclusively that it could provide services sooner than could the city—without first adhering to the requirements of Subsections (B)(1) and (2). The city had argued for the latter reading, namely, that the association should have been required to proceed by first seeking a resolution of incorporation from the city (pursuant to Subsection (B)(1)), and, if it failed at that, then to file a petition with the city to have the territory annexed to the city (pursuant to Subsection (B)(2)).

The court of appeals upheld the commission's finding that the association conclusively had proven that it could provide municipal services to the territory proposed to be incorporated sooner than could the city. The court construed "conclusively prove" in Subsection (B)(3) to mean "prove by clear and convincing evidence." The court of appeals independently did not review the record to determine if the commission had erred in reaching its conclusion.

The court stated:

Rather than review the full record on our own, we rely on [the city] to point out the manner in which the evidence before the county commission was inadequate. [The city's] answer brief, however, merely notes that there was evidence contrary to the commission's findings. [The city] does not direct us to any particular find-

ing of the commission that lacks support in the record.

*Santa Teresa Concerned Citizens Association v. County of Dona Ana*, N.M. (Ct. App.1989).

Further, the court of appeals interpreted Subsection (B)(3) as establishing the proper procedure for "resolving a *dispute* when a municipality wishes to annex some neighboring territory and the residents of the territory wish to incorporate a new city." *Id.* (Emphasis added). Finally, the court ruled against the city on its allegation of bias, holding that the commission's previous ruling against the city's planned annexation did not amount to such bias as would preclude the commission from conducting a fair hearing of issues related to the association's petition to incorporate.

The city moved for a rehearing, alleging that the court of appeals had erred by (1) failing to review the whole record of the proceedings below; (2) failing to find that the association had not met its burden of proof that it could provide municipal services sooner than could the city; and (3) failing to find in the record that the city indeed had pointed out the manner in which the evidence before the commission was inadequate.

The New Mexico Municipal League (amicus) filed an amicus curiae memorandum supporting the city's reading of the statute in question. Amicus contended that (1) the doctrine of prior jurisdiction precluded the commission from resolving a supposed dispute between the association and the city; (2) the commission had no jurisdiction over the supposed dispute; (3) the court's reading of Section 3–2–3(B) leads to absurd and illogical results; (4) the statute gives the city a right of first refusal rather than a veto right to deny any petition for annexation under Subsection (B)(2); (5) the court erroneously construed the words in Subsection (B)(3), "territory proposed to be annexed;" and (6) the court in its ruling frustrated the public policy of New Mexico as set forth in NMSA 1978 Sections 3–1–1 to 3–7–18.

The court granted the motion for rehearing in part, stating that "[t]he sole matter upon which rehearing is granted is the matter addressed in amicus curiae's memorandum brief, which deals with the interrelationship of the subparts of NMSA 1978, Section 3–2–3(B)." In a new opinion issued on November 20, 1989, the court repeated the major portion of its findings and rulings as set forth in the opinion filed on August 3. As to the city's and amicus' contentions that the association should have proceeded first under Subsections (B)(1) and (2) before presenting evidence under (B)(3), the court ruled, "[W]e do not decide whether Section 3–2–3(B) required [the association] to seek annexation of the Territory [proposed to be incorporated] to [the city] before trying to incorporate a new municipality." *Santa Teresa Concerned Citizens Association, Inc. v. County of Dona Ana*, N.M. (Ct.App.1989). The court elaborated:

> The appellants—[the association]—did not address the possible interrelationship of subparagraphs 2 and 3 of Section 3–2–3(B) in their docketing statement or in their brief-in-chief. The issue also does not appear in [the city's] answer brief. The issue was first raised in [amicus'] answer brief. Nothing in [the city's] answer brief refers to [amicus'] answer brief. Nothing in [the city's] answer brief refers to [amicus'] brief or purports to adopt any of its arguments. [The association's] reply brief responded to [amicus'] arguments on this issue, but it also contended that the issue was not before this court because it had been raised only by amicus curiae.

*Id.*

## D. ORIGINAL PROCEEDINGS ON CERTIORARI BEFORE THE SUPREME COURT

On December 7, 1989, the city filed a petition for writ of certiorari with this court, which we granted. The city asserts as error (1) the court of appeal's failure to conduct a whole record review under its newly enunciated "clear and convincing evidence" standard, or, in the alternative, its

failure to remand the case to the district court for such a review; (2) the court of appeal's failure to decide that the commission had no jurisdiction under Subsection (B)(3) to resolve a dispute between the city and the association; and (3) the court of appeal's failure to remand to the district court for a determination of bias on the part of the commission.

## II. OUR HOLDING ON APPEAL

After considering the briefs on appeal and in support of the petition, attachments to the briefs from the record, and pertinent portions of the record on file with the court of appeals, we reverse the court of appeals and affirm the district court decision of May 21, 1987. Our independent review of the record convinces us that the district court was correct to rule that the evidence introduced by the association showed at best that the city is unable to provide municipal services sooner than the association by *no more* than a preponderance of the evidence. Because the association did not carry its burden of *conclusive proof* on this issue, the district court rightly ruled in the city's favor.

We need not reach the question considered by the court of appeals as to the meaning of "conclusive proof." Whatever "conclusive proof" means, it obviously is a much higher standard of proof than "a preponderance of the evidence." A determination of the meaning of "conclusive proof" is not necessary in order for us to sustain the district court's ruling that the association's evidence supports the requisite finding by *no more* than a preponderance of the evidence. We turn next to a brief discussion of the statute at issue.

Since 1963, NMSA 1978, Section 3-2-3 has undergone two revisions. One, in 1967, is minor and of no concern to us here. A previous revision, however, in 1965, gives us significant guidance as to the legislature's purpose in enacting this section. (*See* 1963 N.M.Laws, ch. 160; 1965 N.M. Laws, ch. 300; 1967 N.M.Laws, ch. 198). The 1967 version of the law is the same as the present NMSA 1978, Section 3-2-3 (Repl.Pamp.1987).

We quote the statute below in its 1965 form, underlining words or phrases added to the 1963 version by the 1965 revision, and bracketing words or phrases that were deleted from the 1963 version:

[Section 1.] A. Urbanized territory [area] is that territory within five miles of the boundary of any [incorporated] municipality having a population of five thousand or more persons and that territory [area] within three miles of [the boundary of any incorporated] a municipality having a population of less than five thousand persons. [Section 2.] B. No territory [part of] within an urbanized territory [area] shall be incorporated as a municipality [as provided under Section 14-3-1 through 14-3-5, 14-4-1 through 14-4-3, 14-23-15 and 16, New Mexico Statutes Annotated, 1953 compilation] unless the:

[A.] (1) [The] municipality or municipalities causing the [within whose] urbanized territory [area the area proposed to be incorporated is situated] shall approve [of the incorporation] by resolution the incorporation of the territory as a municipality, [or]

[B.] (2) [The area] residents of the territory proposed to be incorporated [has legally petitioned each] have filed with the municipality [within whose urbanized area the area] a valid petition to annex the territory proposed to be incorporated [is situated, for annexation, and the petition for annexation has not been approved by a valid ordinance of annexation] and the municipality fails, within one hundred twenty days [of its presentation] after the filing of the annexation petition, to annex the territory proposed to be incorporated or

[C.] (3) residents of the territory proposed to be annexed conclusively prove that [T] the [incorporated] municipality is unable to provide municipal services [in the annexed area] within the territory proposed to be incorporated within the same period of time that the proposed [incorporated] municipality could provide [the same] municipal services.

1963 N.M.Laws, ch. 160; 1965 N.M.Laws, ch. 300.

An insignificant addition to the above language was made by 1967 N.M.Laws, ch. 198, which added the words "within the same county and" in two places in Subsection (A) of the 1965 revision. That change, along with the 1965 changes quoted above, add up to our present statute. *See* NMSA § 3-2-3 (Repl.Pamp.1987).

We find that the legislature, by making the 1965 changes in the statute, was intending to make a significant statement as to its purpose in enacting the law relating to the incorporation of municipalities. Most important, the 1965 revised statute made it much more difficult for residents of a given territory to incorporate than previously. In the former Subsection (2)(C), now Subsection (B)(3), there was no requirement of conclusive proof regarding the issue of whether the existing or proposed municipality could provide services sooner. The words "conclusively prove that" must not have been inserted lightly by the legislature, for elsewhere in our statutes the legislature clearly distinguishes between the varying burdens of proof that are to be used in adjudicatory hearings.

For example, in NMSA 1978, Section 40-7-49 (Repl.Pamp.1989), pertaining to adoption hearings, the legislature stated, "The petitioner shall present and prove each allegation set forth in the petition for adoption by clear and convincing evidence," and, in another subsection, pertaining to a different petition, "If the court determines that the allegations have not been proved by a preponderance of the evidence, the petition shall be dismissed." NMSA 1978, § 40-7-49(B) and (D) (Repl.Pamp.1989). Thus we conclude that the legislature knew what it was doing when it added the "conclusive proof" requirement to Section 3-2-3(B)(3).

The policy reasons for this requirement are easy to discern. The legislature has, in effect, declared the public policy of this state to be that the growth of municipalities and of their contiguous and urbanized areas shall take place in a planned and orderly manner. Further, it is the state's policy to discourage splinter communities or a proliferation of neighboring, independent municipal bodies, whose competing needs would divide tax revenues, multiply services, create confusion and factionalism among our citizens, and destroy the harmony that should exist between peoples of diverse backgrounds and socioeconomic strata within our state.

We conclude that the district court correctly applied the stringent standard of "conclusive proof" in its review of the commission's findings. We now summarize our own independent review of those findings.

■ With respect to sewage treatment services, the evidence before the commission showed either that the city could provide such services first or, in the estimation of one of the association's own experts, the city and the association could provide sewage treatment services at about the same time. Further, the city has already been awarded grant funding to extend collector lines into the territory proposed to be incorporated/annexed, while the association has not shown how it can fund the extension of collector lines. With respect to the provision of water service, the evidence shows that the city presently has an excess water capacity sufficient to meet the needs of the territory proposed to be incorporated/annexed. The association's evidence in rebuttal merely establishes, at best, that the city's present water system is faulty due to lack of water pressure. Evidence establishes that this problem can be remedied. There is no conclusive evidence in the record to show that the association can provide water service to the territory before the city can.

With respect to refuse collection, the city presently does not provide a collection system. Instead, it provides the landfill, and citizens themselves haul refuse to the landfill. Or, some citizens use the hauling services of the city's private contractor. While the evidence might show that the city's present refuse collection system needs to be improved in order to provide services to the territory proposed to be

incorporated/annexed, it does not show conclusively that the association can provide refuse service sooner.

With respect to other municipal services, such as fire and police protection, the evidence shows that the city already has such services in place with the capacity to extend them to the territory proposed to be incorporated/annexed and that the association has not budgeted expenditures in its proposed budget for similar services. An accountant who helped the association prepare a "pro forma" budget testified that no expenditures had been budgeted by the association for a fire department (while the city already provides services for fires), for a landfill (while the city's evidence showed that its landfill presently serves all residents of southern Dona Ana County), for a jail (while the city has shown its capacity to provide jail services upon annexation). The evidence shows that the association plans a library, although it has budgeted no funds for this facility, while the city proposes low-cost housing instead of a library. Such a comparison of two different proposed services does not establish who could first provide "municipal services" to the territory proposed to be incorporated/annexed.

Most significantly, the evidence shows that the city would have available to it more working capital to provide funding for services to the territory proposed to be incorporated/annexed on the date of annexation (some $328,000) than would the association on the date of incorporation (less than $50,000). Accordingly, our review of the evidence convinces us that the district court was right to have found that the association did not carry its burden of conclusively proving that it could provide services sooner than could the city.

We need not reach here the question of the interrelationship of the three subparts of Section 3-2-3(B). Nothing in our opinion is to be read as approving either the court of appeals' or the district court's reading of subsection (B) as permitting parties similarly situated to the association and city here to proceed directly to resolution of a "dispute" under sub-part (3) without first adhering to the procedures set forth in sub-parts (1) and (2) of subsection (B). In this particular case, even had the parties proceeded by way of sub-parts (1) and (2) before arriving at the evidentiary determination contemplated by sub-part (3), the association still would not have prevailed. Hence, under the peculiar factual pattern before us, it is pointless for us to consider the question of the interrelationship of the three sub-parts of subsection (B).

For the foregoing reasons, the decision of the court of appeals is reversed and the district court's decision of May 21, 1987, finding that the association has not conclusively proven that it can provide services to the territory proposed to be incorporated/annexed sooner than could the city, is affirmed.

IT IS SO ORDERED.

RANSOM, BACA, MONTGOMERY and WILSON, JJ., concur.