954 P.2d 1186 (1998)
124 N.M. 709
1998-NMCA-025
Mark D. and Catherine H. COX, et al., Petitioners-Appellees,
v.
MUNICIPAL BOUNDARY COMMISSION and The City of Sunland Park, Respondents-Appellants.
No. 17823.
Court of Appeals of New Mexico.
January 13, 1998.
*1187 Sarah M. Singleton, Grace Philips, Montgomery & Andrews, P.A., Santa Fe, for appellees.
Tom Udall, Attorney General, Monica M. Ontiveros, Assistant Attorney General, Santa Fe, for appellant Municipal Boundary Commission.
Paul D. Mannick, Frank R. Coppler, Coppler & Mannick, P.C., Santa Fe, for appellant City of Sunland Park.

OPINION
BOSSON, Judge.
¶ 1. This is the latest in a long series of disputes between the City of Sunland Park, which wishes to annex certain land in the Santa Teresa area of southern Dona Ana County, and various residents of the area who object. See Cox v. Municipal Boundary Comm'n, 120 N.M. 703, 905 P.2d 741 (Ct. App.1995) (Cox I). Today we decide: (1) whether the Municipal Boundary Commission (the Commission) may appeal from the order of the district court remanding this action for a new hearing after new notice; (2) whether the Commission published sufficient notice of its hearing on January 25 and 26, 1992 at which it considered Sunland Park's petition for annexation; and (3) whether the Commission had the necessary quorum to hear Sunland Park's petition when its only attorney commissioner recused himself. Answering each question in the affirmative, we decide, most importantly, that the statutory notice applicable to Commission proceedings is NMSA 1978, Section 3-7-14(B) (1965), and not NMSA 1978, Section 3-1-2(J) (1987) of the Municipal Code. As a result, we reverse the district court and affirm the annexation proceedings of the Commission.

STANDARD OF REVIEW
¶ 2. The New Mexico Legislature has delegated to the Commission, an administrative agency, the authority to make annexation decisions. See NMSA 1978, §§ 3-7-11 to -16 (1965, as amended through 1995); Mutz v. Municipal Boundary Comm'n, 101 N.M. 694, 697, 688 P.2d 12, 15 (1984); Cox I, 120 N.M. at 705, 905 P.2d at 743. The district court reviews Commission decisions by writ of certiorari. See § 3-7-15(E). Under that limited standard of review, the district court determines whether Commission actions are reasonable and supported by substantial evidence and not fraudulent, arbitrary, or capricious. Cox I, 120 N.M. at 705, 905 P.2d at 743. We apply the same standard in reviewing Commission actions. Id. We are not bound by the district court's resolution of questions of law which we review de novo. Id.

BACKGROUND
¶ 3. Whether the Santa Teresa area should be annexed to Sunland Park, or organized in some other way, has been a subject of public debate since at least 1986, when Sunland Park wrote property owners in southern Dona Ana County urging them to seek annexation. See City of Sunland Park v. Santa Teresa Concerned Citizens Ass'n, 110 N.M. 95, 792 P.2d 1138 (1990). Instead of responding to Sunland Park's invitation, some property owners formed the Santa Teresa Concerned Citizens Association and petitioned the Dona Ana County Commission for incorporation as a separate municipality, pursuant to NMSA 1978, Sections 3-2-1 to -9 (1965). See City of Sunland Park, 110 N.M. at 95, 792 P.2d at 1138. The County Commission approved the petition, but the Supreme Court ultimately reversed on the ground that the Concerned Citizens Association "did not carry its burden of conclusively proving that it could provide services sooner than could the city [Sunland Park]." Id. at 100, 792 P.2d at 1143.
¶ 4. Sunland Park then petitioned the Commission to order annexation under Sections 3-7-11 to -16. The Commission scheduled a hearing for January 25 and 26, 1992, and published notice pursuant to Section 3-7-14(B), once each week for four consecutive weeks in the Las Cruces Sun-News, a local newspaper of general circulation, with the last publication more than twenty days before the hearing. There is no dispute that *1188 the Commission fully complied with Section 3-7-14(B).
¶ 5. At some time after notice of the hearing was first published, but before the hearing took place, a petition circulated among Santa Teresa property owners and business owners opposing annexation. Some, but not all, of the Petitioners-Appellees herein (Petitioners) signed the petition. At the hearing some of the Petitioners, as well as other like-minded persons and attorneys for some Petitioners, opposed annexation with lay and expert witnesses, by direct and cross-examination, and with argument. Some of the Petitioners signed the sign-in sheet at the hearing. Other Petitioners did not appear at the hearing either personally or through counsel and did not sign the petition circulated before the hearing. At the hearing no one challenged the adequacy of the notice published by the Commission pursuant to Section 3-7-14(B).
¶ 6. After the hearing, the Commission decided that most of the land proposed for annexation met the criteria contained in Section 3-7-15(A), in that it was contiguous to existing Sunland Park boundaries and Sunland Park could provide municipal services to the new territory within a reasonable time. The Commission ordered that the territory be annexed, with the exception of certain specified lots which are not at issue in this appeal.
¶ 7. Petitioners then applied for a writ of certiorari to the district court for Santa Fe County, which ruled that the Commission had erred in not considering an expanded concept of contiguity including community of interest and homogeneity. On interlocutory appeal, this Court reversed the district court and remanded for further consideration of other issues raised by Petitioners. See Cox I, 120 N.M. at 705, 708, 905 P.2d at 743, 746.
¶ 8. On remand to the district court, Petitioners revived an issue that had been mentioned in their original petition for writ of certiorari to the district court but which had not been briefed before the court nor raised in the Commission below: whether the Commission provided adequate public notice of the January 25 and 26, 1992 hearing. Petitioners claimed that the Commission lacked subject matter jurisdiction because it had published notice in the Las Cruces Sun-News, pursuant to Section 3-7-14(B), but not in a newspaper of general circulation with an office in Sunland Park or, in the alternative, that it had not posted notice at six public places within Sunland Park, all as set forth in a general definitional section of the Municipal Code, Section 3-1-2(J). The district court agreed with Petitioners and ordered a new hearing with new notice under Section 3-1-2(J). The Commission and Sunland Park appeal from this order.
¶ 9. There is one additional issue. By statute, one of the members of the Commission must be an attorney. See § 3-7-12(A). Before the January 1992 hearing, some of the Petitioners asked that the attorney commissioner recuse himself because he had previously represented the Santa Teresa Concerned Citizens Association in proceedings before the County Commission. The attorney commissioner honored the request and recused from Commission proceedings. At the January 1992 hearing no one questioned whether the Commission had a quorum to proceed. However, Petitioners now argue that the Commission lacked a quorum without the presence of the attorney commissioner, an absence procured by some of the very Petitioners who now offer this absence as another ground for reversal of the Commission's decision to annex.

WHETHER THE PARTIES MAY APPEAL FROM THE ORDER OF THE DISTRICT COURT REMANDING THIS ACTION FOR NEW NOTICE AND A NEW HEARING
¶ 10. Petitioners move to dismiss this appeal claiming that the order of remand is not a final, appealable order. See Martinez v. New Mexico Taxation & Revenue Dep't, 117 N.M. 588, 589, 874 P.2d 796, 797 (Ct.App.1994) (district court remand to Motor Vehicle Division to conduct a hearing to create a record sufficient for review was not a final, appealable order). Sunland Park and the Commission counter with the doctrine of practical finality, under which "an appellate court will review a remand order if the issue raised on appeal would, as a practical matter, not be available for review after a decision on remand." High Ridge Hinkle Joint Venture v. City of Albuquerque, *1189 119 N.M. 29, 34, 888 P.2d 475, 480 (Ct.App.1994). For the reasons that follow, we apply the doctrine of practical finality and deny the motion to dismiss this appeal.
¶ 11. The Commission and Sunland Park cite to Bustamante v. C de Baca, 119 N.M. 739, 741, 895 P.2d 261, 263 (Ct.App.1995), in which the Department of Public Safety suspended an officer without pay for ninety days as a disciplinary measure, and the officer appealed to the district court. The district court reversed the suspension, determining that the underlying statute was unconstitutionally vague, and remanded for further consideration without reliance on that statute. Id. The department appealed to this Court, which held it had jurisdiction under the doctrine of practical finality because, after remand, if the officer did not appeal the agency's decision, and the agency could not appeal its own decision, then the agency would be without an avenue of appeal to challenge the district court's earlier ruling that the statute was unconstitutional. Id. at 741-42, 895 P.2d at 263-64. We find this reasoning persuasive.
¶ 12. We acknowledge that here, unlike the situation in Bustamante, there are two adversarial parties, Petitioners and Sunland Park, in addition to the Commission. Whichever party is displeased with the Commission's decision on remand could petition once again for a writ of certiorari, although the Commission, itself, could not. However, like Bustamante, the underlying legal issue pertaining to statutory notice is important to the continuing ability of the Commission to function, and, like Bustamante, the Commission's ability to obtain appellate review of the statutory notice issue is completely dependent upon the decision of another party to continue this dispute, which has already lasted several years and undoubtedly taxed its participants dearly.
¶ 13. Moreover, the district court's present decision on statutory notice may be rendered moot by the expanded notice required for the second hearing. On the next appeal, our focus would likely be on the Commission's second hearing, not on whether notice for the first hearing was appropriate. See Cox I, 120 N.M. 703, 905 P.2d 741; South River Power Partners, L.P. v. Pennsylvania Pub. Util. Comm'n, 673 A.2d 422, 424 n. 2 (Pa.Commw.Ct.1996) (reaching notice issue on interlocutory appeal because issue of type of notice required would be moot in further proceedings). For all practical purposes, the district court's ruling on which statute governs notice for Commission proceedings is now final and ripe for appellate adjudication. Thus, we apply the doctrine of practical finality and turn to the merits of the appeal.

THE GENERAL NOTICE REQUIREMENTS OF SECTION 3-1-2(J) DO NOT GOVERN COMMISSION PROCEEDINGS
¶ 14. We must decide whether the Commission is required to comply with the Municipal Code's general notice definitions set forth in Section 3-1-2(J), in addition to the notice provisions which are specifically applicable to the Commission in Section 3-7-14(B). Section 3-1-2(J), the general notice definition of the Municipal Code, sets forth the following:
"[P]ublish" or "publication" means printing in a newspaper that maintains an office in the municipality and is of general circulation within the municipality or, if such newspaper is a nondaily paper that will not be circulated to the public in time to meet publication requirements or if there is no newspaper that maintains an office in the municipality and is of general circulation within the municipality, then "publish" or "publication" means posting in six public places within the municipality on the first day that publication is required in a newspaper that maintains an office in the municipality and is of general circulation within the municipality.... The municipal clerk may, in addition to posting, publish one or more times in a newspaper of general circulation in the municipality[.]
Section 3-7-14(B), the statute specifically applicable to the Commission, provides:
The secretary to the municipal boundary commission shall publish a notice, of a public hearing on the petition, once each week for four consecutive weeks and the last publication shall be at least twenty days before the day of the hearing. The notice shall contain the date when the meeting of the municipal boundary commission will be held, the place of the meeting *1190 and a general description of the boundary of the territory petitioned to be annexed to the municipality.
¶ 15. Comparing the statutes, there are two basic differences. Section 3-1-2(J) describes the newspaper, requiring that it be of general circulation, and that it maintain an office in the municipality. Failing that, Section 3-1-2 imposes the alternative of posting within the municipality. On the other hand, Section 3-7-14(B) simply requires publication in a newspaper, and does not mention the location of its office, nor even a requirement of general circulation. There is no alternative of posting. It is undisputed in this case that the Commission published notice in accordance with Section 3-7-14(B) and satisfied that statute. Although there is no express reference in Section 3-7-14(B) to publication in a newspaper of general circulation, the statute clearly contemplates general circulation in the community, and there is equally no dispute that the Las Cruces Sun-News is such a newspaper. The sole remaining difference, therefore, is posting. The record is silent on whether any notice was posted as set forth in Section 3-1-2(J), and we assume it was not. We also assume that the Las Cruces Sun-News had no office in Sunland Park. That brings us to the issue in dispute. Given the established fact of publication of notice in a newspaper of general circulation in the community, the question is whether posting is nonetheless required, just because the newspaper had no office in Sunland Park. In other words, Petitioners contend, we must add the requirements of Section 3-1-2(J) to Section 3-7-14(B). This requires us to construe the statutory scheme.
¶ 16. We begin with general principles. "In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." Key v. Chrysler Motors Corp., 1996-NMSC-038, 121 N.M. 764, 768-69, 918 P.2d 350, 354-55. Our Supreme Court has stated that in divining what the legislature is trying to accomplish, "it is part of the essence of judicial responsibility to search for and effectuate the legislative intentthe purpose or objectunderlying the statute." State ex rel. Helman v. Gallegos, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994).
¶ 17. We observe that both of these statutes have the general goal of alerting the public to a pending matter so that interested persons may be prepared to comment and participate. See Hawthorne v. City of Santa Fe, 88 N.M. 123, 124, 537 P.2d 1385, 1386 (1975) (reason for public notice before a zoning hearing is to allow interested parties to express an opinion, pro or con, at the hearing). Neither statute requires personal notice, but they rely on different methods of notice by publication. Section 3-1-2(J) provides notice primarily to persons within the municipality, because the newspaper must have an office in the municipality, and if notice is to be posted, it must be done at public places within the municipality. In contrast, Section 3-7-14(B) affords notice equally to everyone with access to a newspaper of general circulation; it does not discriminate in favor of persons within the municipality.
¶ 18. It strikes us as particularly appropriate for this statute to require the Commission to extend notice to persons who, like Petitioners, live outside the boundaries of the municipality and likely have a keen interest in the proposed annexation. See § 3-7-11. Publication to persons only within the municipality would not meet all the goals of Section 3-7-14(B) because they are not the ones whose property may be annexed. It seems to us that publication by way of the Las Cruces Sun-News satisfied the purpose of the Commission statute, Section 3-7-14(B), because its general circulation would have reached both residents of Sunland Park and the very residents of Santa Teresa whose property is under consideration for annexation, including some of the very Petitioners herein. We cannot say the same for the generic definition of publication set forth in Section 3-1-2(J).
¶ 19. Both the City of Sunland Park and the Commission argue that the annexation article which is located at NMSA 1978, Sections 3-7-1 to -17 (1995), and particularly that portion providing for the Commission, Sections 3-7-11 to -16, constitutes a self-contained law which is meant to be construed *1191 separately and not merely as part of the much larger Municipal Code. We need not decide whether we agree with this assertion. We do note, however, that the Commission is in the nature of a state entity rather than a municipal one. It is staffed by the State Department of Finance Administration rather than by any municipal employees, and the commissioners are appointed by the Governor, not by any municipal authority. Thus, the Commission generally appears to be quite independent of any municipality. See § 3-7-11 (purpose of the statute "is to establish an independent commission"); § 3-7-12 (appointing the commission). This structure makes good sense given the Commission's mission of arbitrating boundary disputes between a city and landowners located outside it. See generally John R. Cooney, Note, Annexation of Unincorporated Territory in New Mexico 6 Nat. Resources J. 83 (1966). It would be incongruous, at the very least, if the Commission were not to have its own procedure for fulfilling its independent statutory duties, and were left instead to rely by implication on the general definitional sections of the Municipal Code.
¶ 20. We observe that throughout the Municipal Code it is common for specific statutes to define methods of publication different from the general prefatory definitions in Section 3-1-2(J), particularly when there may be a need to reach interested persons located outside the boundaries of the municipality. See, e.g., NMSA 1978, §§ 3-2-5(D) to -7 (1965, as amended through 1985) (providing for separate notice by publication for proposed incorporation of a new municipality); NMSA 1978, § 3-24-9(C) (1993) (providing for separate published notice for an increase in municipal utility rates affecting an area more than five miles beyond municipal boundaries); NMSA 1978, § 3-27-6 (1965) (providing for specific published notice to hear a petition regarding water supply contracts of a municipality affecting persons within and outside the city); NMSA 1978, § 3-33-15(B) (1991) (defining published notice to establish an improvement district affecting persons outside municipal boundaries); NMSA 1978, § 3-46-30(C) (1971) (providing for a specific notice by publication in regard to an urban renewal plan); NMSA 1978, § 3-51-11(B) (1971) (providing for published notice to create a parking district); NMSA 1978, § 3-60-25(C) (1979) (providing for specific published notice to review a community development plan for an area within and outside a municipality); NMSA 1978, § 3-60A-8(B) (1979) (providing for specific published notice in regard to a metropolitan redevelopment area); NMSA 1978, § 3-63-10(B) (1988) (providing for a specific published notice for a business improvement district). Often, the statute speaks in terms of publication in a newspaper of general circulation in the affected area which presumably would include the Las Cruces Sun-News in this instance. Conversely, when the Municipal Code wishes to utilize the specific published notice as set forth in the general definitional section, the Code will sometimes mention Section 3-1-2(J) by specific citation which was not done here. See, e.g., NMSA 1978, § 3-1-5(K)(3) (1991). Accordingly, we conclude that it would be consistent with legislative purpose, as well as the general statutory scheme of the Municipal Code, for the statute that is specifically designed for this Commission to have its own publication requirements that are fashioned to meet that design, and separate from the general definitions in the Municipal Code.
¶ 21. We recognize that in a strictly technical sense it is possible for the Commission to afford notice under both statutes: publication and posting. Petitioners argue that this is what the Commission should have done, despite not having raised this issue before the Commission below when their request could have been considered in a timely fashion. Without a clear indication that the legislature intended such a duplication of effort, we are reluctant to interpret statutes so as to complicate proceedings further and increase their costs. We note that in an appeal from a previous, unrelated Commission proceeding, our Supreme Court described the notice of the hearing quite simply: "Notice of public hearing was published as required by Section 3-7-14(B)[.]" Mutz, 101 N.M. at 696, 688 P.2d at 14. While this exact issue was not before the Court, it is nonetheless an indication of the statutory interpretation which most logically applies with regard to Commission proceedings. As a general proposition, when two statutes are directed *1192 toward the same subject, one general and one specific, the specific statute controls. Stinbrink v. Farmers Ins. Co., 111 N.M. 179, 182, 803 P.2d 664, 667 (1990). The specific statute here is Section 3-7-14(B), and it was complied with in all respects. That is sufficient. We therefore disagree with the district court's conclusion that the Commission lacked subject matter jurisdiction due to improper notice.

THE COMMISSION HAD THE NECESSARY QUORUM TO HEAR SUNLAND PARK'S PETITION WITHOUT THE PRESENCE OF ITS ATTORNEY COMMISSIONER
¶ 22. Petitioners contend the Commission's decision cannot stand because the Commission lacked a quorum when its attorney commissioner did not participate. Petitioners did not prevail in the district court on this issue and raise it on appeal under Rule 12-201(C) NMRA 1997 which provides that "[a]n appellee may, without taking a cross-appeal or filing a docketing statement, raise issues on appeal for the purpose of enabling the appellate court to affirm ... the judgment or order appealed from." Petitioners contend that even if notice was adequate, the district court must still be affirmed and the cause remanded to the Commission for a new hearing because of the lack of a quorum. We hold Petitioners may properly raise this issue pursuant to Rule 12-201(C).
¶ 23. We reject Petitioners' contention, however, and hold that the Commission had the necessary quorum to hear Sunland Park's petition without the presence of the attorney commissioner. Section 3-7-12(A) requires that one of the members of the Commission be an attorney. The same statute specifies that there will be three members of the Commission. Section 3-7-14(A) provides in pertinent part, "A majority of the commission shall constitute a quorum and the commission shall not transact business without a quorum being present." Cf. In re Petition of Kinscherff, 89 N.M. 669, 671, 556 P.2d 355, 357 (Ct.App.1976) (under common law, any act done by less than a quorum of the members of a board or commission was invalid). Two members constitute a majority and thus a quorum of the three-member Commission. The legislature did not say that one of those two members had to be the attorney commissioner. See § 3-7-14. When the legislature specifies what portion of a board or commission will constitute a quorum it is not for the courts to say otherwise. See Kinscherff, 89 N.M. at 671, 556 P.2d at 357 ("[H]ad the legislature intended that the presence of two of the voting members [out of a total membership of three voting and three non-voting members] would constitute a quorum they would have so specified."). Thus, the Commission acted with a properly constituted quorum. Furthermore, we note that Petitioners requested that the attorney commissioner file a recusal in this case, and having done so, they now allege that this factor precluded the other commissioners from acting on the proposed annexation. We disagree. Cf. Cordova v. Taos Ski Valley, Inc., 1996-NMCA-009, 121 N.M. 258, 263, 910 P.2d 334, 339 (decided in 1995) ("A party who has contributed, at least in part, to perceived shortcomings in a trial court's ruling should hardly be heard to complain about those shortcomings on appeal.").

CONCLUSION
¶ 24. We reach the merits of the appeal by applying the doctrine of practical finality. We conclude that the Commission gave adequate notice of its January 1992 hearing and acted with a proper quorum. Accordingly, we reverse the decision of the district court and affirm the order of the Commission granting Sunland Park's petition for annexation. Sunland Park is awarded its costs on appeal.
¶ 25. IT IS SO ORDERED.
DONNELLY and BUSTAMANTE, JJ., concur.