# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **AUGUST 22, 2018**

**No. A-1-CA-35927**

**PROVISIONAL GOVERNMENT OF SANTA TERESA and MARY GONZALEZ,**

Plaintiffs-Petitioners,

v.

**DOÑA ANA COUNTY BOARD OF COUNTY COMMISSIONERS,**

Defendant-Respondent,

and

**CITY OF SUNLAND PARK,**

Intervenor.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Mary Rosner, District Judge**

Robles, Rael & Anaya, P.C.
Robert M. White
Randy M. Autio
Lance D. Hough
Albuquerque, NM

for Petitioners

Doña Ana County Attorney's Office
Thomas R. Figart
Nelson J. Goodin
Las Cruces, NM

for Respondent

Holt Mynatt Martínez P.C.
Bradley A. Springer
Casey B. Fitch
Las Cruces, NM

for Intervenor

**OPINION**

**BOHNHOFF, Judge.**

{1}     In this appeal we are called upon to consider the counterintuitive proposition that, under New Mexico law, residents of territory who wish to incorporate the territory as a new municipality in order to avoid being annexed by an existing neighboring municipality must first petition the existing municipality to annex the territory. The Provisional Government of Santa Teresa (PGST), a New Mexico non-profit corporation consisting of owners of land in the Santa Teresa area in Doña Ana County, New Mexico, seeks to incorporate the area as a municipality, separate from neighboring City of Sunland Park (Sunland Park). PGST contends that, because Sunland Park in 2014 informally expressed an intent to annex Santa Teresa, pursuant to NMSA 1978, Section 3-2-3(B)(3) (1995), PGST could petition the Doña Ana Board of County Commissioners (DABOCC) to incorporate as a separate municipality. DABOCC denied the petition based on its determination that Section 3-2-3(B)(3) required PGST first to submit a formal petition asking Sunland Park to annex the subject territory. PGST appealed that decision to the district court, which agreed with DABOCC. PGST now appeals to this Court. We reverse.

**MUNICIPAL ANNEXATION AND INCORPORATION STATUTES**

**Annexation**

{2}     NMSA 1978, Sections 3-7-1 to -18 (1965, as amended through 2003), provides three general methods for an existing municipality to annex territory. First, under the arbitration method, an existing municipality can pass a resolution stating its desire to annex the territory and declaring that "the benefits of municipal government are or can be made available within a reasonable time to the territory." Section 3-7-5. An arbitration board is created, with three members representing the municipality, three members representing the territory to be annexed, and one independent member selected by the other six. Section 3-7-6; Section 3-7-9. The board meets, investigates, and decides whether the benefits can be made available and whether annexation should take place. Section 3-7-10. Second, under the commission method, either the existing municipality or a majority of the landowners in the territory to be annexed can submit a petition to the Municipal Boundary Commission (MBC). Section 3-7-11. If the MBC determines that the territory is contiguous and "may be provided with municipal services," it orders the annexation. Section 3-7-15(A)(2). Third, under the petition method, the owners of a majority of the land in the subject territory submit a petition to the municipality, and the municipality either consents to or rejects the petition. Section 3-7-17.

{3}      Section 3-7-17.1 establishes special requirements for annexation petitions submitted to existing municipalities with a population of less than 300,000 persons and located in Class A counties, which are counties having an assessed valuation of over $75,000,000 and a population of 100,000 or more persons. NMSA 1978, § 4-44-1(B) (2018). Doña Ana County is a Class A county. If the petition is signed by the owners of a majority of the number of acres in the area proposed for annexation, the petition must be submitted to the board of county commissioners of the county in which the municipality is located for comment by the board. Section 3-7-17.1(B). If the petition is not signed by owners of a majority of the number of acres, under certain circumstances the extraterritorial land use commission, *see* NMSA 1978, Section 3-21-3.2 (2003), also must approve the petition. Section 3-7-17.1(C), (D).

**Incorporation**

{4}      NMSA 1978, Sections 3-2-1 to -9 (1976, as amended through 2018), governs incorporation of new municipalities. Residents of the territory in question may petition the board of county commissioners in which the territory is located to incorporate. Section 3-2-1(A). The petition must be signed by at least 200 residents of the territory or the owners of at least 60 percent of the land within the territory. *Id*. The petition must include a "municipal services and revenue plan." Section 3-2-1(B).

Section 3-2-5 provides that the board will determine if the statutory requirements are met; if they are met, the board conducts an election in which residents of the territory vote on whether to incorporate.

{5}    Section 3-2-3 places limits on incorporation within "urbanized territory." "Urbanized territory is that territory within the same county and within five miles of the boundary of any municipality having a population of five thousand or more persons and that territory within the same county and within three miles of a municipality having a population of less than five thousand persons[.]" *Id.* § 3-2-3(A). The parties herein agree that the territory that PGST seeks to incorporate is urbanized territory.

{6}    Section 3-2-3(B) provides that:

>    No territory within an urbanized territory shall be incorporated as a municipality unless [in addition to satisfying the other requirements of Sections 3-2-1 to -9] the:
>
>    (1)    municipality or municipalities causing the urbanized territory approve, by resolution, the incorporation of the territory as a municipality;
>
>    (2)    residents of the territory proposed to be incorporated have filed with the municipality a valid petition to annex the territory proposed to be incorporated and the municipality fails, within one hundred twenty days after the filing of the annexation petition, to annex the territory proposed to be incorporated; or
>
>    (3)    residents of the territory proposed to be annexed conclusively prove that the municipality is unable to provide municipal

4

services within the territory proposed to be incorporated within the same period of time that the proposed municipality could provide municipal service.

**BACKGROUND**

**1980s-1990s Annexation and Incorporation Efforts**

{7}     As is recounted in *City of Sunland Park v. Santa Teresa Concerned Citizens Ass'n, Inc.*, 1990-NMSC-050, ¶ 2, 110 N.M. 95, 792 P.2d 1138, in June 1986, Sunland Park expressed an interest in annexing Santa Teresa by sending letters to certain Santa Teresa landowners encouraging them to seek annexation into the municipality. In August of that year, property owners who had formed themselves into the Santa Teresa Concerned Citizens Association, Inc. (Association), petitioned DABOCC to incorporate the area as a separate municipality. *Id.* ¶ 3. Later that month, Sunland Park petitioned the MBC to approve its proposed annexation. *Id*. In October 1986, following hearings, DABOCC ruled that, pursuant to Section 3-2-3(B)(3), the Association had conclusively proven that it could provide municipal services more quickly than Sunland Park. *City of Sunland Park*, 1990-NMSC-050, ¶ 3. Sunland Park appealed to the district court. Although the district court rejected Sunland Park's argument that Section 3-2-3(B)(3) required the Association to seek annexation of the territory by Sunland Park, pursuant to Section 3-2-3(B)(2), before seeking incorporation, it reversed DABOCC's decision on the ground that the Association

5

had not proven conclusively that it could provide municipal services more quickly than Sunland Park. *See id.* ¶ 4.

{8}     Our Supreme Court affirmed the district court. *Id.* ¶¶ 13-27. Three aspects of the *Sunland Park* opinion are relevant here. First, the Court articulated the purpose behind the 1965 amendment to Section 3-2-3(B)(3) to require "conclusive proof" of the proposed municipality's ability to provide services sooner than the existing municipality can:

> The policy reasons for this requirement are easy to discern. The [L]egislature has, in effect, declared the public policy of this state to be that the growth of municipalities and of their contiguous and urbanized areas shall take place in a planned and orderly manner. Further, it is the state's policy to discourage splinter communities or a proliferation of neighboring, independent municipal bodies, whose competing needs would divide tax revenues, multiply services, create confusion and factionalism among our citizens, and destroy the harmony that should exist between peoples of diverse backgrounds and socioeconomic strata within our state.

*City of Sunland Park*, 1990-NMSC-050, ¶ 20. Second, the Court determined that the Association in fact had not conclusively proven that its proposed new municipality could provide services sooner than Sunland Park. *Id.* ¶¶ 21-25. Third, the Court declined to address, as unnecessary, the interplay between Sections 3-2-3(B)(2) and (3), i.e., whether the Association had to petition Sunland Park to annex Santa Teresa, pursuant to Section 3-2-3(B)(2), before it could invoke Section 3-2-3(B)(3) and seek DABOCC's permission to incorporate. *City of Sunland Park*, 1990-NMSC-050, ¶ 26.

6

Sunland Park's contemplated annexation of the Santa Teresa territory was never completed.

**Recent Annexation and Incorporation Efforts**

{9} Beginning in the late summer of 2014, Sunland Park's City Council undertook a series of steps that expressed the municipality's renewed interest in pursuing annexation of the Santa Teresa territory. Following lengthy discussion at its August 19 and September 16, 2014, meetings about annexing the Santa Teresa area, the City Council passed a resolution on October 7, 2014, stating that: "[T]he City of Sunland Park would like to extend a hand to the residents of Santa [Teresa] and open a discussion regarding the possible annexation of the Santa [Teresa], New Mexico, area. . . . [T]he City of Sunland Park and the Santa [Teresa] area can grow and benefit from such annexation as the area can improve their infrastructure and economic development"; on the basis of these considerations, the City Council resolved to authorize the mayor and City Council "to establish dialogue with the Santa [Teresa] residents of the home owners associations of Santa [Teresa] and its residents concerning the possible methods of annexation."

{10} In July 2015, and pursuant to Section 3-2-5, PGST filed a petition with DABOCC to incorporate approximately 4,000 acres as a new municipality. At a meeting on November 24, 2015, DABOCC voted 4-0 to deny the petition (DABOCC

7

Order). The Board interpreted Section 3-2-3(B)(3) to require the residents to first comply with Section 3-2-3(B)(2) and file an annexation petition with Sunland Park: The DABOCC "interprets the use of the term 'residents of the territory proposed to be annexed' to require a petition for annexation be made prior to determining the issues related to the providing of municipal services." Accordingly, DABOCC declined to proceed with the incorporation petition, in particular, to address whether the proposed new municipality could provide services sooner than could Sunland Park.

{11}    PGST appealed the DABOCC order to the district court. The district court initially ruled in favor of PGST but then, following a motion for reconsideration filed by Sunland Park, reversed itself. In its September 19, 2016 order, the court acknowledged that "it does not make sense to this Court that the entity (Santa Teresa) which seeks to become its own incorporated municipality must first ask Sunland Park to annex it which the evidence shows is precisely what the citizens of Santa Teresa do not want." Nevertheless, the court ruled that Section 3-2-3(B)(2) "requires, as a condition of incorporation, for Santa Teresa to deliver to the City of Sunland Park, a valid petition for annexation. It has not done so." The district court concluded that, "When the Dona Ana County Board of County Commissioners, dismissed Santa Teresa's motion to become incorporated, it correctly interpreted the law."

8

**DISCUSSION**

{12}    On appeal, the parties advocate the same construction of Section 3-2-3(B) that they did to DABOCC and the district court. PGST contends that the three subparts of Section 3-2-3(B) are independent, "stand-alone" paths to municipal incorporation, and in particular Section 3-2-3(B)(3) is the path that is available to a group of residents in unincorporated territory who oppose annexation by an adjoining or nearby municipality. PGST further argues that the plain meaning of the phrase "proposed to be annexed" in Section 3-2-3(B)(3) encompasses informal expressions of a municipality's desire or intention to annex the territory. PGST concludes that the Sunland Park City Council's 2014 resolution satisfied this predicate requirement for acting, pursuant to Section 3-2-3(B)(3), and PGST therefore was entitled to submit its incorporation petition to and have it considered by DABOCC.

{13}    DABOCC and Sunland Park contend that the phrase "proposed to be annexed" in Section 3-2-3(B)(3) refers to the formal annexation petition described in Section 3-2-3(B)(2). PGST therefore must file a petition with Sunland Park seeking Sunland Park's annexation of PGST's territory, and conclusively prove in the context of that proceeding that it can provide municipal services sooner than can Sunland Park, before PGST can file a petition with DABOCC to incorporate as a new municipality. DABOCC and Sunland Park reason that this construction of Section 3-2-3(B)(3)

9

furthers the underlying legislative purpose, as articulated in *City of Sunland Park,* of discouraging splintering of communities and instead promoting their orderly development.

{14}	We note initially that DABOCC and Sunland Park do not dispute that Section 3-2-3(B) creates three approaches to incorporation. Rather, their argument focuses on the meaning of "proposed to be annexed" in Section 3-2-3(B)(3), in particular, whether the proposal to which the phrase refers is the formal annexation petition that is described in Section 3-2-3(B)(2). In other words, Sections 3-2-3(B)(2) and (3) are not stand-alone approaches and instead are interrelated, a position the district court adopted below.

{15}	As the issue before this Court is one of statutory construction, the standard of review is de novo. *Cobb v. State Canvassing Bd.*, 2006-NMSC-034, ¶ 33, 140 N.M. 77, 140 P.3d 498. We consider, in turn, Section 3-2-3(B)(3)'s plain meaning; its construction in harmony with Section 3-2-3(B)(2) as well as other, related statutes; and whether the parties' respective proposed constructions of Section 3-2-3(B)(3) lead to an absurd result.

**A.	Plain Meaning**

{16}	Statutes are to be construed in accordance with their plain meaning. *Oldham v. Oldham*, 2011-NMSC-007, ¶ 10, 149 N.M. 215, 247 P.3d 736 ("[A court should]

10

look first to the plain language of the statute, giving the words their ordinary meaning[.]" (internal quotation marks and citation omitted)); *Cummings v. X-Ray Assocs. of N.M., P.C.*, 1996-NMSC-035, ¶ 44, 121 N.M. 821, 918 P.2d 1321 ("When interpreting statutes, . . . [the Courts'] responsibility is to search for and give effect to the intent of the [L]egislature. . . . Our understanding of legislative intent is based primarily on the language of the statute, and we will first consider and apply the plain meaning of such language." (citation omitted)). "We may depart from the plain language only under rare and exceptional circumstances." *State v. Padilla*, 2008-NMSC-006, ¶ 41, 143 N.M. 310,176 P.3d 299 (Chavez, J., dissenting) (internal quotation marks and citation omitted).

{17} The plain meaning of "propose" is not limited to a formal proposal. As defined in *Webster's Third New International Dictionary* 1819 (unabr. 1986), "propose" means "to offer for consideration, discussion, acceptance, or adoption." Thus, in the context of Section 3-2-3(B)(3), "proposed to be annexed" encompasses informal proposals to consider annexation such as 2014 Sunland Park resolution. In the absence of some statutory construction consideration that requires us to do so, we do not read into a statute language—here, "formally proposed to be annexed" or "petitioned to be annexed"—that the Legislature has not included. *Id.*; *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413,

11

970 P.2d 599 ("[A] court will not read into a statute or ordinance language which is not there, particularly if it makes sense as written.").

**B.     Related Statutes**

{18}     A statute also is to be construed in harmony with other, related statutes. "[W]e analyze a statute's function within a comprehensive legislative scheme. . . . [A statute] must be considered in reference to . . . statutes dealing with the same general subject matter." *In re Grace H.*, 2014-NMSC-034, ¶ 34, 335 P.3d 746 (internal quotation marks and citation omitted). "Whenever possible, . . . we must read different legislative enactments as harmonious instead of as contradicting one another. . . . Statutes which relate to the same class of things are considered to be in pari materia[.]" *State v. Tafoya*, 2010-NMSC-019, ¶ 10, 148 N.M. 391, 237 P.3d 693 (omission, internal quotation marks, and citations omitted). For several reasons, DABOCC's and Sunland Park's construction of Section 3-2-3(B)(3) is not compatible with related statutes.

**1.     Reconciling Section 3-2-3(B)(3) With Section 3-2-3(B)(2)**

{19}     We first must reconcile Section 3-2-3(B)(3) with Section 3-2-3(B)(2). As discussed above, Section 3-2-3(B)(2) authorizes incorporation of "urbanized territory" where the proponents of incorporation have filed an annexation petition with the existing municipality and the municipality fails to annex the territory in

question within 120 days. Section 3-2-3(B)(3) authorizes such incorporation where the proponents prove that the existing municipality is unable to provide municipal services within "the territory proposed to be annexed" within the same period of time that the proposed municipality would provide the services. If the Legislature intended "proposed to be annexed" in Section 3-2-3(B)(3) to refer to the annexation petition described in Section 3-2-3(B)(2), we would expect it at minimum to use the same term: "petitioned" as opposed to "proposed"; the Legislature would have no reason to use a different term unless it intended a different meaning. Alternatively, the Legislature would have structured Section 3-2-3(B) to make clear that the annexation petition that is the subject of Section 3-2-3(B)(2) is also the predicate or precondition to proceeding pursuant to Section 3-2-3(B)(3). DABOCC and Sunland Park propose such a construction of Section 3-2-3(B)(3): one that effectively combines Sections 3-2-3(B)(2) and (3) into one subsection with two subparts, both of which require the filing of an annexation petition with the municipality. However, the statute is not written in that manner. As structured and worded by the Legislature, the most logical construction of Section 3-2-3(B) is that advocated by PGST: it provides three stand-alone alternative approaches to incorporation.

{20} In support of its argument that the district court did not err, Sunland Park also invokes the "last antecedent" rule. *See In re Goldsworthy's Estate*, 1941-NMSC-036,

13

¶ 21, 45 N.M. 406, 115 P.2d 627 ("[R]elative and qualifying words, phrases, and clauses [here, "proposed to be annexed"] are to be applied to the words or phrase immediately preceding, and are not to be construed extending to or including others more remote." (internal quotation marks and citation omitted)). We disagree that the last antecedent rule applies here. First, the reference to a formal annexation petition does not immediately precede the phrase that it supposedly qualifies, "proposed to be annexed." *See* 2A Norman J. Singer & Shambie Singer, *Statutes and Statutory Construction* § 47:33, at 498-99 (rev'd 7th ed. 2014) ("[A] proviso usually applies to the provision or clause *immediately* preceding it." (Emphasis added.)) Instead, the reference to a formal annexation petition is found in a separate, disjunctive subpart of the statute. Second, the preceding phrase is entirely different: again, DABOCC and Sunland Park provide no basis for inferring that the Legislature intended "proposed" to refer back to "petition," particularly where the Legislature just as easily could have used the phrase "petitioned to be annexed" if that was its intent.

**2.      Reconciling Section 3-2-3(B)(3) With Other, Related Statutes**

{21}      We next consider whether the parties' competing constructions of Section 3-2-3(B)(3) are consistent with Sections 3-2-5, 3-7-17, and 3-7-17.1. As stated above, Section 3-2-5 provides for the board of county commissioners of the county within which the subject territory is located to determine if the conditions of Section 3-2-

14

3—including whether, under Section 3-2-3(B)(3), the territory's residents can prove "conclusively" that the new municipality can provide services more quickly than the existing municipality—are met as part of the board's review of an *incorporation* petition and determination to hold an election. This is consistent with PGST's stand-alone construction of Section 3-2-3(B)(3). However, DABOCC's and Sunland Park's construction of Section 3-2-3(B)(3) necessitates that the question be addressed in the context of a Section 3-7-17 or Section 3-7-17.1 *annexation* petition proceeding filed with the municipality. Neither Section 3-7-17 nor Section 3-7-17.1 provides for the municipality to address the Section 3-2-3(B)(3) question, and we perceive no other statutory basis for inferring any legislative intent that, where residents are seeking to incorporate a new municipality as an alternative to annexation by an existing municipality, the existing municipality itself should be the arbiter of whether it can provide municipal services more quickly than the proposed new municipality.[1]

---

[1]Section 3-7-17.1(B) does provide for the municipality to submit the annexation petition to the board of county commissioners *for comment*, but only if the petition is signed by the owners of a majority of the number of acres in the territory proposed for annexation. *See id.* Further, even assuming that this provision could be construed to permit the municipality in that situation to seek the board's input on the Section 3-2-3(B)(3) question, the municipality would be free—inconsistent with the apparent intent of Section 3-2-3(B)(3)—to disregard the board's determination and either annex or decline to annex as the municipality wished.

15

### 3. Prior jurisdiction and related timing issues

{22}     DABOCC attempts to meet this last objection to its construction of Section 3-2-3(B)(3) by suggesting that the municipality will seek the county's input during the course of the annexation proceeding. DABOCC describes the decision-making process (in a scenario in which PGST prevails) thus: "The Incorporators [PGST] petition Sunland Park for annexation, Sunland Park begins the process and when that process is underway, the Incorporators request [DA]BOCC to hold a [Section 3-2-3(B)] hearing, which is held, and the Incorporators prevail on the provision of municipal services issue. . . . [A] favorable [Section 3-2-3(B)] hearing outcome for the Incorporators would trump and displace the Sunland Park annexation process." Not only is such a procedure not authorized by either Section 3-2-5 or Section 3-7-17 (or Section 3-7-17.1), as PGST argues, it is incompatible with the prior jurisdiction doctrine.

{23}     The common law prior jurisdiction doctrine provides that "the court first obtaining jurisdiction retains it as against a court of concurrent jurisdiction in which a similar action is subsequently instituted between the same parties seeking similar remedies involving the same subject matter." *In re Doe*, 1982-NMCA-115, ¶ 13, 98 N.M. 442, 649 P.2d 510, *overruled on other grounds by State v. Roper*, 1996-NMCA-073, ¶ 12 n.3, 122 N.M. 126, 921 P.2d 322. New Mexico courts have

extended the doctrine to municipal annexation disputes. *Amrep Sw., Inc. v. Town of Bernalillo*, 1991-NMCA-110, ¶ 8, 113 N.M. 19, 821 P.2d 357 (applying doctrine and determining that, because it was filed first in time, annexation petition proceeding filed with MBC had prior jurisdiction over annexation petition proceedings filed with municipalities). Courts in other jurisdictions have extended the doctrine to conflicting municipal annexation and incorporation disputes. *See generally* 2 McQuillin, *The Law of Municipal Corporations* § 7.39.3 (July 2018 Update) ("The general rules governing the acquisition of jurisdiction are usually applied where there are competing incorporation and annexation proceedings. A proceeding for the annexation of territory to a municipal corporation is ineffectual when instituted after the institution of a proceeding for the organization of the territory into a village or city, and while that proceeding is pending and undetermined. Conversely, if annexation proceedings were instituted before municipal organization proceedings, the latter are ineffectual." (footnotes omitted)). The rule is longstanding. *See, e.g.*, *State ex rel. Winn v. City of San Antonio*, 259 S.W.2d 248, 250 (Tex. Civ. App. 1953).

{24}     DABOCC's suggested procedure cannot be squared with the aforementioned statutes and the dictates of prior jurisdiction. DABOCC has authority to hold a Section 3-2-3(B)(3) hearing only pursuant to Section 3-2-5, i.e., only after a

incorporation petition is filed. However, once filed, the Section 3-7-17.1 annexation proceeding would invalidate any incorporation petition. That is, PGST's right to proceed with incorporation following a favorable ruling on the Section 3-2-3(B)(3) question would be "trumped" by Sunland Park's annexation proceeding, not the other way around. Quite simply, if residents of territory who propose to incorporate a new municipality must first file "a valid petition to annex the territory" to an existing municipality, then the residents would lose any control over their fate and instead would subject themselves to the municipality's unfettered ability to accept the petition and annex the territory into the municipality. Absent some expression of legislative intent, not present here, to override the prior jurisdiction doctrine, *see, e.g.*, *City of Greenwood v. Petitioners for the Proposed City of Centennial*, 3 P.3d 427, 434-36 (Colo. 2000) (en banc), we are not inclined to endorse a construction of Section 3-2-3(B)(3) that requires residents of territory who wish to incorporate as a means of *avoiding* annexation to take steps that expose themselves to the unavoidable possibility if not probability of such a result.

{25}     As PGST points out, a related timing problem arises from DABOCC's and Sunland Park's construction of Section 3-2-3(B)(3). If PGST were to file an annexation petition with Sunland Park, Section 3-7-17.1(B) requires Sunland Park to approve or disapprove the petition within sixty days. In contrast, during the

18

incorporation process described in Section 3-2-1 and Section 3-2-5: DABOCC would conduct an initial review of the application within thirty days for compliance with the requirements of Section 3-2-1; assuming such compliance is found, a census would be conducted; the local government division of the New Mexico Department of Finance and Administration would review the municipal services plan (with PGST to respond within three months if the review identified any deficiencies); following completion of those tasks, DABOCC would "determine if the conditions for incorporation of the territory as a municipality have been met as required in Sections 3-2-1 through 3-2-3." Section 3-2-5(D). Only at that point would DABOCC make the determination called for in Section 3-2-3(B)(3). As a practical matter it likely would be impossible for PGST to complete the incorporation process—or even get to the point of obtaining DABOCC's decision whether Sunland Park or the proposed new Santa Teresa municipality can deliver services more quickly—within Section 3-7-17.1(B)'s sixty-day period for Sunland Park to act on the annexation petition. Either Sunland Park would fail to comply with the sixty-day deadline (and arguably Section 3-2-3(B)(2)'s 120-day deadline as well), or it would simply approve PGST's annexation petition and thereby moot the incorporation petition. DABOCC and Sunland Park's construction of Section 3-2-3(B)(3) effectively would nullify any meaningful opportunity for residents of unincorporated territory to utilize Section 3-

2-3(B)(3) to avoid unwanted annexation, which opportunity seems to be the basic purpose of the statute.

{26} To summarize, DABOCC and Sunland Park advocate without any statutory basis superimposing on top of annexation proceedings a procedure that is authorized only for incorporation proceedings. This hybrid scheme raises seemingly insurmountable prior jurisdiction and practical timing problems. Particularly given the absence of any language in any of the affected statutes, it is difficult to accept the proposition that the Legislature intended such a scheme.

## C.    Absurd Construction

{27} Courts will not construe a statute in a manner that leads to an absurd result. *Trujillo v. Romero*, 1971-NMSC-020, ¶ 18, 82 N.M. 301, 481 P.2d 89. This rule is most often invoked when applying the plain or literal meaning of the words of the statute leads to an absurd result, *see Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, ¶ 6, 149 N.M. 157, 245 P.3d 1209 ("We do not depart from the plain language of a statute unless we must resolve an ambiguity, correct a mistake or absurdity, or deal with a conflict between different statutory provisions." (internal quotation marks and citation omitted)), but it is equally if not more applicable as a ground for insisting on application of the words' plain meaning to *avoid* an absurdity.

20

{28} As the district court effectively acknowledged, it is absurd to construe Section 3-2-3(B)(3) to require residents of a territory who oppose annexation by an existing, adjoining municipality to file a petition asking that municipality to annex their territory. Conversely, it is reasonable to construe "proposed to be annexed" to encompass an informal expression by the municipality of its intent to annex the territory. Indeed, such a construction is consistent with the apparent intent of Section 3-2-3(B)(3) to permit residents of adjoining territory who oppose such an announcement of contemplated annexation to respond with a petition for incorporation as an alternative to the anticipated annexation, just as occurred in Doña Ana County in 2014.

**D. Legislative Intent**

{29} Relying on the language from *City of Sunland Park* quoted above, DABOCC and Sunland Park argue that requiring residents living within five miles of a municipality in an urbanized county "to petition the urbanized municipality for annexation into that municipality, thus affording the municipality the option to annex or not, before resort to a [Section 3-2-3(B)] hearing, fosters the State's public policy."

{30} If a statute is not ambiguous, then it is unnecessary to discern the policy that underlies the statute and instead we construe it by applying the plain meaning of the statute's words. *See Weed Warrior Servs.*, 2010-NMSC-050, ¶ 11. Here, the district

21

court found that Section 3-2-3(B)(3) was not ambiguous, none of the parties contend to the contrary on appeal, and we concur. Therefore, it is not necessary to engage in a public policy analysis. *Cf. Ortiz v. Overland Express*, 2010-NMSC-021, ¶ 18, 148 N.M. 405, 237 P.3d 707 ("When a statute's language is ambiguous or unclear, we look to legislative intent to inform our interpretation of the statute."); *Helen G. v. Mark J.H.*, 2008-NMSC-002, ¶¶ 37-38, 143 N.M. 246, 175 P.3d 914 (noting that ambiguous provisions require the court to ascertain statute's legislative purpose).

**E.     Summary**

{31}     An existing municipality has the right to pursue annexation, pursuant to Sections 3-7-1 to -18, independent of any action taken by the residents of the territory in question; if the municipality initiates such action, it will have prior jurisdiction. In addition, Section 3-2-3(B)(1), (2) effectively grant an existing municipality limited first rights of refusal in connection with efforts to incorporate neighboring "urbanized" territory. Section 3-2-3(B)(3) is most reasonably construed to grant a narrow path to incorporation to residents of the territory who oppose annexation by the municipality. While the Legislature has imposed the hurdle of requiring the residents to prove "conclusively" that the proposed new municipality will be able to deliver municipal services more quickly than could the existing municipality, we do not believe it intended to make the process unreasonable. We hold that Section 3-2-

3(B)(3) does not require residents of a territory to first formally petition the existing municipality to annex the territory before they can file a petition to incorporate as a municipality; such residents may file an incorporation petition pursuant to Section 3-2-1 and Section 3-2-5 if the municipality informally proposes to consider or otherwise expresses an interest in annexing the territory, short of actually initiating formal annexation proceedings. We conclude that the aforementioned actions taken by Sunland Park in 2014 amounted to such an informal proposal.

**CONCLUSION**

{32}     We reverse the district court's September 19, 2016 amended final appellate order from an administrative hearing. We remand this action to the district court to reverse DABOCC's decision and instruct DABOCC to address PGST's claim that it can provide municipal services more quickly than Sunland Park, and whether PGST's petition otherwise satisfies the requirements of Sections 3-2-1 to -9.

{33}     **IT IS SO ORDERED.**

_____
**HENRY M. BOHNHOFF, Judge**

23

**WE CONCUR:**

_____
**LINDA M. VANZI, Chief Judge**


_____
**M. MONICA ZAMORA, Judge**