This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Nos. A-1-CA-36279 and A-1-CA-36363**
**(consolidated for purpose of opinion)**

**PROVISIONAL GOVERMENT OF
SANTA TERESA, a New Mexico
non-profit corporation; MARY
GONZALEZ; WILFREDO SANTIAGO-
VALIENTO; SONIA SANTIAGO;
TOMMY HIGGINS; SACH SUE
COCHRAN; EVELIA CHAPARRO;
RALPH ENCINAS; VICKIE
STANFIELD; JOHNNY STANFIELD;
PAUL MAXWELL; STEPHEN D.
WATSON; KRAIG L. CARPENTER;
and EDWINA SEISS,**

 Appellants/Plaintiffs-Petitioners/Appellants,

v.

**CITY OF SUNLAND PARK,**

 Appellee/Defendant-Respondent/Appellee,

and

**SOCORRO PARTNERS I, LP a/k/a
SOCORRO PARTNERS LP d/b/a
SOCORRO PARTNERS 1, LTD,**

 Interested Party Defendant-Respondent/Appellee,

and

**DOÑA ANA COUNTY BOARD OF COUNTY
COMMISSIONERS,**

 Intervenor-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Manuel I. Arrieta, District Judge**

Robles, Rael & Anaya, P.C.
Robert M. White
Randy M. Autio
Lance D. Hough
Samuel C. DeFillippo
Daniel J. Grunow
Albuquerque, NM

for Appellants

Holt Mynatt Martínez P.C.
Bradley A. Springer
Las Cruces, NM

for Appellee City of Sunland Park

Mounce, Green, Myers, Safi, Paxson & Galatzan, P.C.
David M. Mirazo
El Paso, TX

for Appellee Socorro Partners I, LP a/k/a Socorro Partners LP d/b/a Socorro Partners 1, Ltd.

Nelson J. Goodin, County Attorney
Las Cruces, NM

for Intervenor-Appellant

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}**     These appeals, consolidated for the purpose of this opinion,[1] relate generally to long-standing controversies involving the City of Sunland Park (Sunland Park), and the adjacent unincorporated territory of Santa Teresa in Doña Ana County, New Mexico. We have previously addressed related controversies, most recently in *Provisional Government of Santa Teresa v. Doña Ana County Board of County Commissioners* (*Provisional I*), which includes a summary of the history of efforts to both annex and incorporate Santa Teresa. 2018-NMCA-070, ¶¶ 1, 7-11, 429 P.3d 981. The instant cases center on the annexation petition filed by Socorro Partners I, LP a/k/a Socorro Partners LP d/b/a Socorro Partners 1, LTD (Socorro Partners) to Sunland Park in 2016,

---

1This opinion consolidates two appeals: A-1-CA-36279 and A-1-CA-36363. Because these cases each raise the same determinative issue, we consolidate the cases for this opinion. *See* Rule 12-317(B) NMRA.

in which Socorro Partners requested that Sunland Park annex a portion of Santa Teresa territory—specifically, 229 acres of such territory owned by Socorro Partners.

### *Provisional I*

**{2}** Before discussing further the particulars of the instant cases, we first address *Provisional I*, where we resolved an appeal related to a 2015 petition from Provisional Government of Santa Teresa (PGST), a nonprofit corporation comprised of owners of land in the Santa Teresa area, to the Doña Ana County Board of County Commissioners (DABOCC) to incorporate approximately 4,000 acres of the Santa Teresa territory—including the 229 acres eventually pursued for annexation by Socorro Partners—as a new municipality. *See Provisional I*, 2018-NMCA-070, ¶¶ 10-11. There, we were called upon to interpret NMSA 1978, Section 3-2-3(B) (1967, amended 2019), which governs the incorporation of urbanized territory[2] and defines how unincorporated territory may seek incorporation as a municipality. Under Section 3-2-3(B),

> no territory within an urbanized territory shall be incorporated as a municipality unless the:
>
>     (1)    municipality or municipalities causing the urbanized territory approve, by resolution, the incorporation of the territory as a municipality;
>
>     (2)    residents of the territory proposed to be incorporated have filed with the municipality a valid petition to annex the territory proposed to be incorporated and the municipality fails, within one hundred twenty days after the filing of the annexation petition, to annex the territory proposed to be incorporated; or
>
>     (3)    residents of the territory proposed to be annexed conclusively prove that the municipality is unable to provide municipal services within the territory proposed to be incorporated within the same period of time that the proposed municipality could provide municipal service.

**{3}** In *Provisional I*, the parties' disputes over the interpretation of Section 3-2-3(B)—which focused specifically on Section 3-2-3(B)(2)-(3)—may be summarized as follows: PGST contended that Section 3-2-3(B) provides three distinct and separate methods by which unincorporated territory may seek annexation, and, most pertinently, that unincorporated territory may seek incorporation under either Section 3-2-3(B)(2) or (3). *See Provisional I*, 2018-NMCA-070, ¶ 12. Under PGST's interpretation of the statute, an

---

[2] Under Section 3-2-3(A), "[u]rbanized territory is that territory within the same county and within five miles of the boundary of any municipality having a population of five thousand or more persons and that territory within the same county and within three miles of a municipality having a population of less than five thousand persons, except that territory in a county declared by an ordinance of the board of county commissioners to be a traditional historic community shall not be considered urbanized territory and shall not be annexed by a municipality unless it is considered for annexation pursuant to a petition requesting annexation signed by a majority of the qualified electors within the traditional historic community."

entity representing the interests of unincorporated territory—such as PGST—could seek incorporation *either* by first petitioning an existing municipality for annexation, *or*, if an existing municipality has expressed intent to seek annexation of the territory, the entity may provide proof that once incorporated, the territory would be able to provide municipal services more quickly than the existing municipality, thus avoiding annexation. DABOCC and Sunland Park contended that Section 3-2-3(B)(2)-(3) functions as an interrelated, two-step process requiring compliance with *both* sections in order to seek incorporation. *See Provisional I*, 2018-NMCA-070, ¶¶ 13-14. Under DABOCC and Sunland Park's interpretations, an entity like PGST may seek incorporation of unincorporated territory by first petitioning an existing municipality for annexation, and if the existing municipality fails to annex the territory within 120 days, only then may the entity proceed to prove that once incorporated the territory would be able to provide municipal services more quickly than the existing municipality.

**{4}**     We acknowledged the confusing premise of DABOCC and Sunland Park's interpretations in *Provisional I*, stating that in our opinion we aimed to address "the counterintuitive proposition that, under New Mexico law, residents of territory who wish to incorporate the territory as a new municipality in order to avoid being annexed by an existing neighboring municipality must first petition the existing municipality to annex the territory." *Id.* ¶ 1. There, our statutory analysis—as well as the parties' contentions— "focuse[d in part] on the meaning of 'proposed to be annexed' in Section 3-2-3(B)(3), [and,] in particular, whether the proposal to which the phrase refers is the formal annexation petition that is described in Section 3-2-3(B)(2)," or an informal expression of intent to annex. *Provisional I*, 2018-NMCA-070, ¶ 14. PGST argued that "the plain meaning of the phrase 'proposed to be annexed' . . . encompasses informal expressions of a[n existing] municipality's desire or intention to annex the territory," such as when "Sunland Park in 2014 informally expressed an intent to annex Santa Teresa." *Id.* ¶¶ 1, 12. Indeed, PGST contended that Sunland Park's informal expression of intent to annex was effectively a "proposal to annex," such that PGST could proceed towards incorporation proceedings—without PGST itself having to first seek annexation—and provide proof that the would-be-incorporated territory could provide municipal services sooner than Sunland Park. *Id.* ¶ 12. Conversely, DABOCC and Sunland Park argued that in order to seek incorporation, Section 3-2-3(B) required PGST to first "file a petition with Sunland Park seeking Sunland Park's annexation of PGST's territory, and conclusively prove in the context of that proceeding that" the would-be-incorporated territory would be able to "provide municipal services sooner than [could] Sunland Park, before PGST [could] file a petition with DABOCC to incorporate as a new municipality." *Provisional I*, 2018-NMCA-070, ¶ 13.

**{5}**     Under a plain meaning analysis, we determined that the term "proposed" was "not limited to a formal proposal" and stated that

> in the context of Section 3-2-3(B)(3), "proposed to be annexed" encompasses informal proposals to consider annexation such as [the] 2014 Sunland Park resolution [expressing its intent to annex Santa Teresa territory]. In the absence of some statutory construction consideration that

requires us to do so, we do not read into a statute language—here, "formally proposed to be annexed" or "petitioned to be annexed"—that the Legislature has not included.

*Provisional I*, 2018-NMCA-070, ¶ 17.

**{6}** Having determined in *Provisional I* that the plain meaning of "proposed to be annexed" in Section 3-2-3(B)(3) encompassed informal proposals, and that PGST's incorporation petition otherwise comported with statutory requirements, we next addressed the implications of the doctrine of prior jurisdiction as a basis for our statutory interpretation. *See Provisional I*, 2018-NMCA-070, ¶¶ 17, 19-26. We stated unequivocally that the contentions of DABOCC and Sunland Park—which would require PGST to petition for annexation prior to availing themselves of the opportunity to petition for incorporation—were incompatible with the doctrine of prior jurisdiction given the existence and ongoing proceedings of both PGST's 2015 incorporation petition as well as Socorro Partner's 2016 annexation petition. *See id.* ¶¶ 22-23 ("The common law prior jurisdiction doctrine provides that the court first obtaining jurisdiction retains it as against a court of concurrent jurisdiction in which a similar action is subsequently instituted between the same parties seeking similar remedies involving the same subject matter." (internal quotation marks and citation omitted)). We first clarified in *Provisional I* that the doctrine of prior jurisdiction has been applied to annexation and incorporation proceedings. *Id.* In our analysis regarding prior jurisdiction, we stated,

> Quite simply, if residents of territory who propose to incorporate a new municipality must first file "a valid petition to annex the territory" to an existing municipality, then the residents would lose any control over their fate and instead would subject themselves to the municipality's unfettered ability to accept the petition and annex the territory into the municipality. Absent some expression of legislative intent, not present here, to override the prior jurisdiction doctrine, we are not inclined to endorse a construction of Section 3-2-3(B)(3) that requires residents of territory who wish to incorporate as a means of *avoiding* annexation to take steps that expose themselves to the unavoidable possibility if not probability of such a result.

*Id.* ¶ 24 (citation omitted). We then acknowledged "a related timing problem," *id.* ¶ 25, that would arise under DABOCC and Sunland Park's interpretation of Section 3-2-3(B)(3), namely that

> [a]s a practical matter it likely would be impossible for PGST to complete the incorporation process—or even get to the point of obtaining DABOCC's decision whether Sunland Park or the proposed new Santa Teresa municipality can deliver services more quickly—within [NMSA 1978,] Section 3-7-17.1(B)'s [(2003)] sixty-day period for Sunland Park to act on the annexation petition. Either Sunland Park would fail to comply with the sixty-day deadline (and arguably Section 3-2-3(B)(2)'s 120-day deadline as well), or it would simply approve PGST's annexation petition

and thereby moot the incorporation petition. DABOCC and Sunland Park's construction of Section 3-2-3(B)(3) effectively would nullify any meaningful opportunity for residents of unincorporated territory to utilize Section 3-2-3(B)(3) to avoid unwanted annexation, which opportunity seems to be the basic purpose of the statute.

*Provisional I*, 2018-NMCA-070, ¶ 25. We next stated that while "DABOCC and Sunland Park advocate without any statutory basis superimposing on top of annexation proceedings a procedure that is authorized only for incorporation proceedings[,]" such a "hybrid scheme raises seemingly insurmountable prior jurisdiction and practical timing problems. Particularly given the absence of any language in any of the affected statutes, it is difficult to accept the proposition that the Legislature intended such a scheme." *Id.* ¶ 26. In concluding our opinion in *Provisional I*—having determined that the doctrine of prior jurisdiction precludes a reading of Section 3-2-3(B) that would require the integrated, two-step process toward incorporation proposed by DABOCC and Sunland Park—we summarized as follows:

> Section 3-2-3(B)(3) is most reasonably construed to grant a narrow path to incorporation to residents of the territory who oppose annexation by the municipality. While the Legislature has imposed the hurdle of requiring the residents to prove "conclusively" that the proposed new municipality will be able to deliver municipal services more quickly than could the existing municipality, we do not believe it intended to make the process unreasonable. We hold that Section 3-2-3(B)(3) does not require residents of a territory to first formally petition the existing municipality to annex the territory before they can file a petition to incorporate as a municipality; such residents may file an incorporation petition . . . if the municipality informally proposes to consider or otherwise expresses an interest in annexing the territory, short of actually initiating formal annexation proceedings. We conclude that the aforementioned actions taken by Sunland Park in 2014 amounted to such an informal proposal.

*Provisional I*, 2018-NMCA-070, ¶ 31. We ultimately reversed the district court's order affirming the annexation petition and remanded the proceedings "to the district court to reverse DABOCC's decision and instruct DABOCC to address PGST's claim that it can provide municipal services more quickly than Sunland Park, and whether PGST's [incorporation] petition otherwise satisfies the requirements of [NMSA 1978,] Sections 3-2-1 to -9 [(1965, as amended through 2021)]." *Provisional I*, 2018-NMCA-070, ¶ 32.[3]

_____

3Following the publication of *Provisional I*, our Supreme Court granted Sunland Park's petition for a writ of certiorari, at which time we issued a stay in the instant cases pending the Supreme Court's review of *Provisional I*. The Supreme Court later quashed certiorari, and this Court, on motion by Socorro Partners, lifted the stay and granted the parties leave to file supplemental briefing in light of *Provisional I*, the remand from which was then in effect. Based on a motion by Socorro Partners to supplement the record and take judicial notice of relevant continued proceedings, we are aware that upon remand to the district court, and subsequently to DABOCC, determined that PGST "failed to conclusively prove that . . . Sunland Park is unable to provide municipal services within the same period of time the proposed

**The Effect of *Provisional I* on the Instant Cases**

{7}     In its order related to the instant cases filed in 2017, before we issued our opinion in *Provisional I*, the district court interpreted Section 3-2-3(B)(2)-(3) as functioning interrelatedly and requiring a two-step process towards incorporation—just as DABOCC and Sunland Park argued in *Provisional I*—and determined, in pertinent part that (1) PGST had not complied with Section 3-2-3(B)(2) in filing its incorporation petition, (2) DABOCC correctly dismissed such petition, (3) following DABOCC's dismissal, no valid petition remained currently pending before DABOCC, and (4) based on the statutory noncompliance of PGST's incorporation petition and DABOCC's subsequent dismissal thereof, prior jurisdiction failed to attach in favor of PGST's incorporation petition. Notably, in determining that prior jurisdiction did not attach in favor of PGST's incorporation petition, the district court stated that it was "well aware that [its] decision could be inconsistent with an appellate decision that [PGST's incorporation petition] need not adhere to Section 3-2-3(B)(2) based on the appellate court's interpretation of that section." As explained above, *Provisional I* revealed precisely such an inconsistency.

{8}     While the appeals in the instant cases stem from specific assertions of error in the 2017 order by the district court,[4] the upshot of each appeal amounts to a central question of whether prior jurisdiction attached to PGST's 2015 incorporation petition upon its filing with DABOCC. We need not look further than *Provisional I* to answer that question affirmatively. As noted above, our holding therein was premised upon, in pertinent part, an analysis of the doctrine of prior jurisdiction and its effect on the validity of the relevant annexation and incorporation proceedings. *See Provisional I*, 2018-NMCA-070, ¶¶ 25-26. There, we concluded that based on the doctrine of prior jurisdiction, "if annexation proceedings were instituted before municipal organization proceedings, the latter are ineffectual," *id.* ¶ 23 (internal quotation marks and citation omitted), which would as applied in the instant cases, preclude affirmance of Socorro Partners' annexation petition to Sunland Park given PGST's previously filed incorporation petition.

{9}     The parties filed supplemental briefing to address *Provisional I* and its effect on the instant cases. In such briefing, Socorro Partners argues in part that Section 3-2-3(B)(2)-(3) should not be relied upon to reverse its 2016 landowner-initiated annexation, and should instead function as a "shield for those who oppose annexation," rather than

---

municipality could provide the services." In referencing such facts, we necessarily grant Socorro Partners' motion, in part, by taking judicial notice of the remand proceedings in district court and DABOCC, as illustrated in the motion's attached exhibits. *See* Rule 11-201(B), (C) NMRA (stating that this Court may, on its own, "judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the court's territorial jurisdiction, [or] (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

4In A-1-CA 36279, PGST argues in its brief in chief that the district court (1) erred in applying summary judgment, (2) improperly dismissed PGST's claim based on lack of standing, (3) improperly relied on findings from a previous order, and (4) erred in its interpretation of the doctrine of prior jurisdiction. In A-1-CA-36363, DABOCC argues that the district court erred in (1) its interpretation of the doctrine of prior jurisdiction, and (2) its ruling that DABOCC's complaint in intervention was moot.

as a "sword to crush the aspirations of [Socorro Partners,] the owner of a relatively small portion of the unincorporated area," and Sunland Park, "who *mutually desire and have approved* annexation of that relatively small area." Socorro Partners argues as well that the doctrine of prior jurisdiction "must be applied flexibly in light of the relevant statutes," citing for such a proposition an out-of-jurisdiction case with admittedly "distinguishable" facts and statutory frameworks. Sunland Park argues that PGST lacks standing to bring the current appeal,[5] and that "prior jurisdiction in [the instant cases] was lost when [DABOCC] made its determination on the [incorporation] petition," referring to DABOCC's initial dismissal that was subsequently—and erroneously—affirmed by the district court.

**{10}**    DABOCC, on the other hand, argues that *Provisional I* renders the district court's 2017 order in the instant cases "clearly erroneous," and that prior jurisdiction vested, and remains with DABOCC upon our conclusion that PGST's 2015 incorporation petition was statutorily compliant. Similarly, PGST argues that *Provisional I* unambiguously confirmed that prior jurisdiction attached to PGST's incorporation petition upon its filing with DABOCC, and further refutes (1) Socorro Partners' contention that there exist any "distinctions or carve outs regarding petitions for annexation initiated by . . . landowners," as well as (2) Sunland Park's assertion that PGST lacks standing to appeal the instant cases.

**{11}**    Having reviewed the supplemental briefing, and relying on our own precedent, we hold that the district court's order in the instant cases cannot stand. *Provisional I* renders the very basis of that order—namely that PGST's incorporation petition was statutorily noncompliant and, therefore, no valid petition remained pending before DABOCC and, crucially, prior jurisdiction failed to attach in favor of PGST's incorporation petition—effectively meaningless. Put simply, we can only now appreciate that the continuing annexation proceedings at issue in the instant cases should never have been initiated, and certainly should not have proceeded to the extent they have, given our previous holding in *Provisional I* that PGST's incorporation petition complied with pertinent statutory requirements and that prior jurisdiction attached in its favor. *See Provisional I*, 2018-NMCA-070, ¶¶ 24-26, 31-32. Further, were we to now agree with Socorro Partners' and Sunland Park's arguments to the contrary, we would (1) necessarily render the incorporation litigation—which has travelled between DABOCC, the district court, this Court, and our Supreme Court—a nullity, and (2) fail to comport with the doctrine of prior jurisdiction. We therefore hold that, in light of *Provisional I*, the district court had no basis by which to affirm the approval of Socorro Partners' annexation petition to Sunland Park, given that prior jurisdiction attached in favor of the ongoing incorporation petition proceedings and those proceedings were not completed.

**CONCLUSION**

---

5We note that the district court stated in its 2017 order that "[w]hile [PGST] lacks standing to appeal from the *merits* of the annexation due to it not having any ownership in the subject parcels[—the 229 acres owned by Socorro Partners—PGST] may still protest the *process* of annexation through its claim of [prior] jurisdiction."

**{12}**  For the above reasons, we reverse the district court's order in the instant cases and remand for proceedings consistent with both this opinion and *Provisional I*.

**{13}   IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**KATHERINE A. WRAY, Judge**